IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KAREN OUTTEN and JAMES )
BRADFORD, Individually and on Behalf )
of All Others Similarly Situated, )
)
     Plaintiff, )
)
v. )     Civ. No. 10-1114-SLR
)
WILMINGTON TRUST )
CORPORATION, et al., )
)
     Defendants. )

---

JULIE GRAY, on Behalf of Herself and )
a Class of Persons Similarly Situated, )
)
     Plaintiff, )
)
v. )     Civ. No. 11-00101-SLR
)
WILMINGTON TRUST )
CORPORATION, et al., )
)
     Defendants. )
)

James P. McEvilly, III, Esquire, Gerald D. Wells, III, Esquire and Sandra G. Smith, Esquire of Faruqi & Faruqi, LLP, Wilmington, Delaware. Counsel for Plaintiff Karen Outten and James Bradford.

Joseph J. Bodnar, Esquire of Law Offices of Joseph J. Bodnar, Wilmington, Delaware. Counsel for Plaintiff Julie Gray. Of Counsel: Edwin J. Mills, Esquire of Stull, Stull & Brody, Gregory M. Egleston, Esquire of Egleston Law Firm

Robert Scott Saunders, Esquire of Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Julia E. Zukerman, Esquire, Michael J. Prame, Esquire, Sarah A. Zumwalt, Esquire, and Thomas S. Gigot, Esquire of Groom Law Group, Chartered.

**MEMORANDUM OPINION**

Dated: March 15, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On December 20, 2010, plaintiffs Karen Outten and James Bradford ("Plaintiff Outten"), individually and on behalf of all others similarly situated, instituted an Employee Retirement Income Security Act ("ERISA") class action against Wilmington Trust Corporation, et al.[1] (D.I. 1 at ¶ 1).[2] On January 31, 2011, plaintiff Julie Gray ("Plaintiff Gray"), on behalf of herself and a class of persons similarly situated, instituted an ERISA class action against Wilmington Trust Corporation, et al.[3] (D.I. 1 at ¶¶ 8-20 in 11-00101) Before the court are two competing motions for consolidation and appointment of lead counsel.[4] Plaintiff Gray filed the "Gray motion" for consolidation and appointment of co-lead and liaison counsel on February 28, 2011. (D.I. 23) Plaintiff Outten filed the "Outten motion" for consolidation and appointment of lead counsel on March 14, 2011. (D.I. 26)

The court has jurisdiction over these cases pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). For the following reasons, the court: (1) grants Plaintiff Gray's

---

[1] Plaintiff Outten named the following defendants: Wilmington Trust Corporation, Wilmington Trust Company, Wilmington Trust Corporation Employee Benefits Committee, David R. Gibson, Gary E. Butler, Rebecca A. Deporte, Michael A. DiGregorio, William J. Farrell II, I. Gail Howard, Kevin N. Rakowski, Diane M. Sparks, and Doe Defendants 1-10. (D.I. 1 at ¶¶ 18-33)

[2] Unless otherwise noted, all D.I. numbers referred to herein are D.I. numbers in Civil Action No. 10-1114-SLR.

[3] Plaintiff Gray named the following defendants: Wilmington Trust Corporation, Wilmington Trust Company, The Wilmington Trust Corporation Employee Benefits Committee, David R. Gibson, Rebecca A. Deporte, Michael A. DiGregorio, William J. Farrell II, I. Gail Howard, Kevyn N. Rakowski, Diane M. Sparks, Gary E. Butler, and Ted T. Cecala. (D.I. 1 at ¶¶ 8-20 in 11-00101).

[4] Neither Plaintiff Outten nor Plaintiff Gray seek to be named as lead plaintiff.

motion in full; (2) grants Plaintiff Outten's motion to consolidate; and (3) denies Plaintiff

Outten's motion to appoint lead counsel.

## II. BACKGROUND

Plaintiffs Outten and Gray (collectively "plaintiffs"), participants of the Wilmington

Trust Company Thrift Savings Plan ("Plan"), allege in their respective complaints that

the Wilmington Trust Company ("Company") fiduciaries ("defendants") failed to act

solely in the interest of Plan participants and beneficiaries, thereby breaching their

fiduciary duties during the time period of December 31, 2006 to December 31, 2010 (the

"class period").[5] Specifically, plaintiffs allege that during the class period, the

Company's common stock was an imprudent investment for the Plan because:

> [1] For years [the Company] violated prudent lending
> standards in connection with its real estate-related lending
> business by utilizing appraisals which were outdated and
> unreliable and by failing to take reasonable, prudent steps to
> require borrowers to pay amounts due; [2] throughout the
> Class Period the Company consistently underreported its
> reserves for loan loses in connection with real estate-relating
> [sic] lending, thereby artificially inflating net income and/or
> artificially reducing reported losses; [3] the Company initiated
> and assumed inordinate lending exposure in a single market,
> what it marketed as "beach" properties in Southern
> Delaware, but which were actually a 45 minute drive inland
> in the midst of poultry country; and [4] the Company's myriad
> problems in its real estate-related lending business were so
> widespread and serious that the very survival of the
> Company was at risk during the Class Period, and had M&T
> not purchased the Company for a low price in 2010, the

---

[5]Plaintiff Outten and Plaintiff Gray differ on the alleged class periods. Plaintiff
Outten identifies a class period from January 1, 2008 through the present (D.I. 1 at ¶
36), whereas Plaintiff Gray identifies a class period from December 31, 2006 through
December 31, 2010. (D.I. 1 at ¶ 23 in 11-00101)

likelihood is that the Company would have had to contemplate bankruptcy court protection, or been seized by regulators.

(D.I. 1 at ¶2 in 11-00101; D.I. 1 at ¶3-7)

Plaintiffs bring this action pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a), which permits ERISA plan participants and beneficiaries to commence a civil action seeking appropriate relief. (D.I. 1 at ¶ 34; D.I. 1 at ¶ 3 in 11-00101) Defendants allegedly breached their fiduciary duties in violation of ERISA §§ 404-05, 29 U.S.C. §§ 1104-05, and United States Department of Labor Regulations, including 29 C.F.R. § 2550. (D.I. 1 at ¶¶ 1, 9, 10; D.I. 1 at ¶ 135 in 11-00101) These violations occurred in various ways, including, but not limited to: (1) failing to prudently manage the Plan by acquiring millions of bad investments; (2) failing to properly monitor performance of fiduciary appointees; (3) breaching the duty to avoid conflicts of interest; and (4) failing to disclose and misrepresenting material facts. (D.I 1 at ¶¶ 147-157, 158-167, 168-183; D.I. 1 at ¶¶ 84-102 in 11-00101) Plaintiff Outten asserts that the approximate number of plan participants was over 3,200 individuals (D.I. 1 at ¶ 36), whereas Plaintiff Gray estimates there will be at minimum thousands of members. (D.I. 1 at ¶ 23 in 11-00101)

Plaintiffs, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 42 and 23 and the Manual on Complex Litigation, move for: (1) consolidation of the above-captioned matters; (2) an order consolidating all other actions, currently filed and that may be filed in the future that arise out of the same legal and factual allegations; (3) an order setting out procedures for the efficient management of the consolidated cases; and (4) appointment of lead counsel. (D.I. 23 at 1-2; D.I. 26 at ¶6) While plaintiffs

3

agree that consolidation is appropriate, they disagree on who should be appointed

interim lead counsel. (*Id.*) Plaintiff Gray moves for the appointment of Stull, Stull &

Brody ("SS&B") and the Egleston Law Firm ("Egleston") as interim co-lead ERISA

counsel and the Law Offices of Joseph J. Bodnar ("Bodnar") as interim liaison counsel.[6]

(D.I. 23 at 2) Plaintiff Outten moves for the appointment of Faruqi & Faruqi ("F&F") as

interim lead counsel.[7] (D.I. 26 at ¶6 )

## III. STANDARD OF REVIEW

### A. Consolidation Of The Actions

When actions "before the court involve a common question of law or fact, the

court may . . . consolidate them." Fed. R. Civ. P. 42(a); *see also Dutton v. Harris*

*Stratex Networks, Inc.*, Civ. No. 08-755, 2009 WL 1598408 at *1 (D. Del. June 5, 2009).

While decisions to consolidate are discretionary, the court should "balance

considerations of efficiency, expense, and fairness." *Resnik v. Woertz*, 774 F. Supp. 2d

614, 624 (D. Del. 2011) (citing *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 142-

43 (D. Del. 1999)); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*and Procedure* §2385 (3d ed. 2011) (explaining that a court "is responsible for seeing to

it that the trial of consolidated actions will be conducted in a manner that is not

---

[6]Specifically, Plaintiff Gray submitted the declarations of Edwin J. Mills, Esq. of
SS&B (D.I. 23, ex. 3), Gregory M. Egleston, Esq. (D.I. 24), and Joseph J. Bodnar, Esq.
(D.I. 25)

[7]Specifically, Plaintiff Outten relies on the experience of Gerald Wells, III, Esq.
and James Strum, Esq. (D.I. 27 at 8; D.I. 27, ex. 1) Mr. Strum has since been
terminated and the appearance of James P. McEvilly, III, Esq. has been entered. (D.I.
34)

4

prejudicial to any of the parties"). Courts look to counterbalance "the savings of time

and effort gained through consolidation . . . against the inconvenience, delay or expense

that might result from simultaneous disposition of the separate actions." *Waste*

*Distillation Tech. Inc. v. Pan Am. Res. Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991).

### B. Selection Of Interim Lead Counsel

The selection of lead counsel is "committed to the court's discretion."[8] *Dutton*,

Civ. No. 08-755, 2009 WL 1598408 at *2. "The court, if it sees fit, may appoint one or

more attorneys as liaison counsel, lead counsel, or trial counsel for the consolidated

cases" and may designate responsibilities to the selected counsel.[9] *Resnik*, 774 F.

Supp. 2d at 625 (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*and Procedure* § 2385 (3d ed. 2008)). The appointment of interim lead counsel without

the appointment of interim lead plaintiff is appropriate in pending ERISA class actions

---

[8] Generally, however, courts prefer that parties themselves agree on lead counsel and only look to the court to make the decision in "extraordinary circumstances." 3 *Newberg on Class Actions* § 9.31 (4th ed. 2002).

[9] **Lead counsel** is "charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met." *Manual for Complex Litigation* (Fourth) § 10.221 (2005).
   **Liaison counsel** is "charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), conveying meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts. Liaison counsel will usually have offices in the same locality as the court. . .." *Id.*

when plaintiffs are "individual Plan participants–not active, experienced institutional litigants." *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. 2009).

The selection of lead counsel in consolidated ERISA litigation, although not yet certified as a class action under Fed. R. Civ. P. 23(b), looks to the lead counsel requirements under Fed. R. Civ. P. 23(g).[10] *See* Fed. R. Civ. P. 23(g)(3) ("The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action. . . ."); *In re Delphi ERISA Litigation*, 230 F.R.D. 496, 498 (E.D. Mich. 2005) (appointing interim lead counsel for consolidated ERISA claims applying Rule 23(g)); *see also In re Cardinal Health, Inc. ERISA Litigation*, 225 F.R.D. 552, 555 (S.D. Ohio 2005) (applying Rule 23(g) factors to an ERISA claim); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 357 (E.D. Mich. 2006). Rule 23(g) lists four factors a court must consider when appointing lead counsel: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Ultimately,

---

[10]Fed. R. Civ. P. 23(g)(1) stipulates that, if there is a presiding statute setting out guidelines for selecting lead counsel, the statute supersedes the requirements of Rule 23. For example, when the Private Securities Litigation Reform Act ("PSLRA") is at issue, the court must apply the statutory guidelines in selecting lead counsel. However, because there are no statutes guiding lead counsel selection in ERISA consolidated actions or class actions, the court defers to Rule 23(g). *Vandevelde v. China Natural Gas, Inc.*, 277 F.R.D. 126, 131 (D. Del. 2011).

however, the court must "determine 'which counsel will best serve the interests of the plaintiffs.'" *Resnik*, 774 F. Supp. 2d at 625 (quoting 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 9.35 at 388 (4th ed. 2002)). To decide this, a court may "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). For example, depending on the size and number of different parties, plaintiffs' interests may best be served by appointing liaison counsel, particularly when proposed lead counsel practice primarily outside of the venue of the case. *In re Cardinal Health*, 225 F.R.D. at 555 (citing *Manual for Complex Litigation* (4th ed. 2004) § 10.22 (1955)). Upon selecting interim lead and/or liaison counsel, the court should be confident that any counsel appointed will fulfill its obligation "to act fairly, efficiently, and economically in the interest of all parties and parties' counsel." *Id.*

## IV. DISCUSSION

### A. Consolidation Of The Actions

In the case at bar, consolidation of the actions will not be prejudicial and will save both time and effort of the involved parties. Both actions involve the same or similar defendants and allegations. (*See supra* n. 1, 3; D.I. 23, ex. 1 at 3; D.I. 27 at 4; D.I. 1 ¶¶ 28-33 in 11-00101; D.I. 1 at ¶ 37) Moreover, no objection to consolidation has been filed by defendants and defendants acknowledge the likelihood of consolidation. (D.I. 20 at 2) Finally, both Plaintiff Gray and Plaintiff Outten agree that consolidation of the claims is appropriate. (D.I. 23; D.I. 26). Therefore, the court is satisfied that the actions

should be consolidated and that all future actions arising under ERISA in connection with the above claims shall be similarly consolidated.

## B. Selection Of Interim Lead Counsel And Leadership Structure

As previously discussed, the court must review four factors in appointing lead counsel: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." The court can also look to any other relevant considerations. *See supra* section III.B. The parties do not dispute that counsel is well qualified and has sufficient resources. (D.I. 15 at 11 in 11-00101; D.I. 27 at 9) Therefore, the court will look to: (1) the work counsel has done in identifying and investigating potential claims; (2) the proposed leadership structures; and (3) counsel's relevant experience and knowledge of the law.[11] For the reasons that follow, the court concludes that Gray's proposed co-lead counsel SS&B and Egleston with interim liaison counsel Bodnar are best capable of representing the putative class.

### 1. Work counsel has done in identifying or investigating potential claims.

Both parties argue that they have taken substantial steps to represent the plaintiffs. Plaintiff Gray enumerates seven collective actions taken by SS&B, Egleston,

---

[11]The plaintiffs combine the knowledge and experience factors and, therefore, the court will do so as well.

and Bodnar ("Gray Counsel") on behalf of the Gray Plaintiffs. (D.I. 23, ex. 1 at 8)  Thus

far, Gray Counsel has:

> [1] spoken with proposed class members; [2] drafted and
> filed a detailed complaint with careful analysis as to the
> specific factual circumstances that give rise to this litigation
> on which Plaintiff Gray's allegations of ERISA breach of
> fiduciary duty and imprudence are based; [3] served on
> Defendants a request for all Plan documents pursuant to
> ERISA §104(b) on January 27, 2011; [4] served notice of the
> *Gray* Action on the United States Secretary of the Treasury
> and Secretary of Labor as required by ERISA § 502(h); [5]
> served on Defendant a document preservation letter; [6]
> [attempted to arrange] with defense counsel for acceptance
> of service of process of the *Gray* Action on all Defendants;
> and [7] investigated additional claims against Defendants in
> anticipation of filing a consolidated amended [complaint]. . . .

(*Id.*)  Furthermore, Gray Counsel continues to negotiate with defendants for

documents beyond the ERISA 104(b) obligatory documents.  (D.I. 15, ex. 1 at ¶ 8

in 11-00101)

Plaintiff Outten similarly cites to an extensive investigation and filing record,

including initiating negotiations with defense counsel.  (D.I. 27, ex. 1 at ¶ 26; D.I. 33 at

2)  Examples of these actions are:  (1) serving defendants, prior to filing the complaint,

with a request for Plan documents; (2) filing the Outten complaint six weeks prior to the

Gray complaint; (3) serving all named defendants; (4) negotiating with defense counsel

for documents outside of ERISA § 104(b) that will help in drafting an amended

complaint; and (5) attempting to reach out to Gray Counsel regarding proposed

leadership structures in order to avoid court intervention.  (D.I. 27, ex. 1 at ¶¶ 28, 29;

D.I. 14 at 6-7, 9 in 11-00101)  Negotiations with defendants remained productive until

they were suspended due to the filing of the Gray action.  (D.I. 27, ex. 1 at ¶¶ 27)

On balance, while Outten Counsel performed more work at the start of this action, Gray Counsel has performed more work recently. Although the court notes that Outten Counsel filed first and portions of Outten's complaint were copied verbatim in the Gray complaint,[12] the first-to-file factor when appointing lead counsel has been rejected so as to avoid a "race to the courthouse." *See In re Scrap Metal Antitrust Litig.*, 1:02-CV-0844, 2002 WL 31988203 at *1 (N.D. Ohio Aug. 5, 2002); *see also Manual for Complex Litigation* (Fourth) §10.22 (2005). The court also notes that while Outten Counsel suspended negotiations, Gray Counsel has "received ERISA Section 104(b) documents and has begun the process of negotiating for further production of materials," suggesting that while negotiations with Outten Counsel ceased, Gray Counsel continues negotiations for documents in anticipation of filing an amended complaint. (D.I. 15, ex. 1 at ¶ 8 in 11-00101) Notably, Gray Counsel has also, unlike Outten Counsel, served notice of the action on the Secretary of the Treasury and Secretary of Labor in addition to serving defendants a document preservation letter – Outten Counsel cites to neither action. (D.I. 23, ex. 1 at 8) For these reasons, the court concludes that both parties have done significant work identifying and investigating potential claims, with Outten Counsel performing more work initially and Gray Counsel performing more work as of late.

---

[12] Compare D.I. 1 at ¶¶ 87-88, 97-101, 106, 108, 116; with D.I. 1 at ¶¶ 46-47, 53-56, 58, 60, 74 in 11-00101

### 2. The proposed leadership structures.

As previously discussed, there are two competing leadership structures at issue. Plaintiff Gray proposes a leadership structure of interim co-lead counsel of SS&B and Egleston and interim liaison counsel of Bodnar due to the "large number of parties in this ERISA action." (D.I. 23, ex. 1 at 4 (quoting *In re Cardinal Health, Inc.*, 225 F.R.D. at 554)) Conversely, Plaintiff Outten proposes a single firm of F&F because a "streamlined leadership structure" will better represent the interests of the class. (D.I. 27 at 9; D.I. 33 at 2)

Plaintiff Outten suggests that Plaintiff Gray's structure is inefficient and that the appointment of co-lead counsel and liaison counsel will lead to duplication of efforts. (*Id.*) Plaintiff Outten, in support of its position, points the court to *In re: The Goodyear Tire & Rubber Co. ERISA Litig.* No. 03-cv-2182, and argues that "appointment of a single firm is preferential to the appointment of multiple." (D.I. 27 at 9, citing *In re: The Goodyear Tire & Rubber Co. ERISA Litig.* No. 03-cv-2182, 2004 U.S. Dist. LEXIS 26706 at *19 (N.D. Ohio April 22, 2004)). In *Goodyear*, the court appointed a single lead counsel as opposed to a leadership committee of four firms because the court found that such a structure would be "cumbersome." *Id.*

Appointment of co-lead counsel with liaison counsel, however, will not necessarily be "cumbersome" or "inefficient" and appointment of a single firm is not always ideal.[13] First, the court notes that other courts have appointed co-lead structures in similar ERISA cases. *See e.g. In re Cardinal Health, Inc. ERISA Litig.,*

---

[13]To the extent applicable, the court will ensure that there is no duplication of efforts and the appointment of multiple counsel will not lead to increased fees.

225 F.R.D. at 555; *In re Marsh ERISA Litig.*, 265 F.R.D. at 148; *Nowak*, 240 F.R.D. at

361.  Second, the court notes that Outten Counsel has not served as solo-lead counsel

on an ERISA action, but instead serves as co-lead counsel in current cases.[14]  (D.I. 27,

ex. 1 at ¶¶ 7,8)  Third, despite arguing that a co-lead structure is inefficient, Plaintiff

Outten argues in the alternative that it should be appointed as co-counsel alongside

Gray Counsel.  (D.I. 27, ex. 1 at ¶¶ 28, 29; D.I. 33 at 3)  Fourth, the court notes that

SS&B and Egleston, of Gray Counsel, currently serve as co-lead counsel for two cases

and have likely learned to minimize any inefficiencies.[15]  (D.I. 23, ex. 3 at ¶4)  Fifth, as

discussed more fully in the selection below, Gray Counsel has had great success with

this structure.  In sum, the court finds that Plaintiff Gray's proposed leadership structure

is better suited to represent the interests of the class.

### 3. Relevant experience and knowledge of the law.

Experience and knowledge of the law is of the utmost importance when

determining lead counsel.  *See Nowak*, 240 F.R.D. at 361 (citing In *re Terazosin*

*Hydrochloride*, 220 F.R.D. 672, 71502 (S.D. Fla. 2004) ("The consideration that the

Court finds to be most persuasive, however, relates to Co-Lead Counsel's experience

in, and knowledge of, the applicable law in this field.")); *see also Foltz v. Delaware*

---

[14]The two cases are:  *Bredthauer v. Lundstrom, et al.*, Lead Case No.
4:10CV3132 (D. Neb.); and *Bach v. Amedisys, et al.*, Lead Case No. 10-395-BAJ-CN
(M.D. LA.).

[15]The two cases are: *Stephen Patten v. Northern Trust Company, et al.*, 1:08-CV-
5912 and *In re Terex Corp., ERISA Litig.*, 1:10-cv-000006-RNC (D. Conn.).  (D.I. 23, ex.
3 at ¶4)

*State Univ.* 269 F.R.D. 419, 426 (D. Del. 2010) (finding that counsel is qualified to

"fairly and adequately represent the interests of the class as required by Rule 23(g)"

based on experience and qualifications extracted from Counsel Memorandum). On

balance, Gray Counsel has more experience and knowledge of the law than Outten

Counsel and, for this reason, the court finds that Gray Counsel will best serve the

interests of the plaintiffs.

Plaintiff Gray outlined the history and success of recent ERISA actions in which

proposed interim co-lead counsel and interim liaison counsel have been involved. (D.I.

23, ex. 1 at 5-7). SS&B's ERISA litigation experience, particularly litigation appearing

similar to the issue at bar, indicates extensive experience and knowledge of applicable

law. *Id.* SS&B's experience includes many high-yield cases, such as *In re AOL Time*

*Warner ERISA Litigation*, MDL Docket No. 1500 (S.D.N.Y. 2003). In that case, a

Special Master noted: "[T]he extra mile traveled by counsel to obtain a $100 million

settlement for the class, an amount substantially above what experts considered fair

and what seemed achievable." (D.I. 15, ex. 3 at 32 in 11-00101) Furthermore, Mr.

Mills, of SS&B, has served as co-lead counsel in five of the largest recoveries in ERISA

class action suits involving imprudent investment of retirement plan savings in

company stock. (D.I. 23, ex. 3 at ¶3)[16] Similarly, Mr. Egleston is well qualified through

---

[16]Mr. Mills's large ERISA class actions are (including *In re AOL Time Warner*):
"[1] *National City Corporation Securities Derivative & ERISA Litig.*, 1:08-cv-0700-PAG
(N.D. Ohio) (recovery in 2010 of $43 million in cash to the company's 401(k) plan); [2]
*Overby v. Tyco International, Ltd.*, Case No. 02-CV-1357-B (D.N.H.) (Settlement in
2009 of $70.525 million in cash); [3] *In re AOL Time Warner ERISA Litig.*, Civil Action
No. 02 CV 8853 (SWK) (S.D.N.Y.) (recovery in 2006 of $100 million in cash to the
company's 401(k) plan, in what the court noted was 'one of the largest ERISA
settlements to date'); [4] *In re Cardinal Health Inc. ERISA Litig.*, No. C2-04-643

13

extensive experience in securities class action litigation and complex litigation

generally[17] and is presently involved in several ERISA cases with SS&B.[18] *See supra*

n. 16; (D.I. 23, ex. 1 at 6-7)

Outten Counsel, on the other hand, does not have the degree of expertise and

experience that Gray Counsel does. Mr. Wells for Outten Counsel points out prior

personal experience as an associate with Barroway Topaz Kessler Meltzer & Check,

LLP ("BTKMC")[19] in ERISA litigation prior to joining F&F. (D.I. 27, ex. 1 at ¶¶ 14, 15,

17)[20] Furthermore, his expertise is recognized through appointment to speaking

---

(ALM)(S.D. Ohio 2007) (recovery in 2006 of $40 million in cash to the company's 401(k)
plan); and [5] *In re Lucent Technologies, Inc. ERISA Litig.*, Civil Action NO. 01-cv-3491
(JAP) (D.N.J.) (recovery in 2005 of $69 million [. . .] to the company's 401(k) plan)."
(D.I. 23, ex. 3 at ¶3)

[17]Mr. Egleston's past major litigation experience includes: "[1] *In re Deutsche
Telekom A.G. Sec. Litig.* (S.D.N.Y. ($120 million settlement fund); [2] *In re Willbros
Group, Inc. Sec. Litigl* (S.D. Tex.) ($10.5 million settlement fund); *In re Lumenis Sec.
Litig.* (S.D.N.Y.) ($20.1 million settlement); [3] *In re Marsh & McLennan Companies Inc.
Sec. Litig.* ($400 million settlement); *In re Union Global Comm., Inc. S'holders Litig.* ($25
million recovery in going-private transactions); and [4] *In re Cablevision Sys. Corp.
S'holders Litig.* (Blocked going-private transaction by controlling shareholder leading to
payment of a dividend to shareholders worth approximately $2.5 billion)." (D.I. 24 at ¶2)

[18]Those cases are: *Stephen Patten v. Norther Trust Company, et. Al.*, 1:08-CV-
5912 (N.D.I.L); and *In re Terex ERISA Litig.*, 1:10-cv-00006-RNC (D. Conn.).

[19]BTKMC served as co-lead counsel with SS&B for two major ERISA actions: *In
re AOL Time Warner* and *In re Sears, Roebuck & Co.* (D.I. 27, ex. 1 at ¶17); *see also
supra* n. 16.

[20]Mr. Wells served as class counsel for: *In re Bristol-Myers Squibb ERISA Litig.*,
No. 02-cv-10129 (S.D.N.Y.); *In re Westar Energy Inc. ERISA Litig.*, No. 03-4032-JAR
(D. Kan.); *In re Federal Home Loan Mortgage Corp. Securities & Derivative Litig.*, No.
04-md-1584 (S.D.N.Y.); *In re RCN ERISA Litig.*, Master File No. 04-cv-5068 (D. NJ.);
and *Falk v. Amerada Hess Corp.*, No. 03-cv-2492-FSH-PS. (D.I. 27, ex.1 at ¶ 15)

engagements. (*Id.*) However, Outten Counsel, through F&F, only cites to two ERISA actions. (D.I. 27 at 7; D.I. 27, ex. 1 at ¶¶7-8) Moreover, Outten Counsel wishes to be solo lead counsel, but has only ever been appointed as co-lead counsel. *Id.* Finally, it is asserted that the experience of managing partner Mr. Strum makes Outten Counsel "uniquely qualified." (D.I. 27 at 8) On October 25, 2011, Mr. Strum terminated his appearance and now Mr. McEvilly has entered appearance in Delaware for Outten Counsel. (D.I. 34) Therefore, the experience of Mr. Strum is irrelevant to this decision.

Based upon the above, the court concludes that Gray Counsel has the most experience in ERISA and class action litigation. Like the court in *In re Cardinal Health, Inc.* determined, if the firms "managed the workload in similarly large ERISA suits on prior occasions, they can handle this litigation too." *In re Cardinal Health, Inc.*, 225 F.R.D. at 556. Therefore, because the significant experience obtained by Gray Counsel, on balance, outweighs the significant experience of Outten Counsel, Gray Counsel will best serve the interests of the class.

## V. CONCLUSION

For the foregoing reasons, the court finds that consolidation is appropriate and Gray Counsel's proposed leadership structure of co-lead and liaison counsel is approved. An appropriate order shall issue.

15