## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: WILMINGTON TRUST CORP. ERISA LITIGATION | Civ. No. 10-01114-SLR<br><br>Hon. Sue L. Robinson<br><br>ELECTRONICALLY FILED |

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT ("*Settlement Agreement*") is entered into by and between *Named Plaintiffs* (as defined below), for themselves and on behalf of the *Settlement Class* (as defined below), and *Defendants* (as defined below) in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate.

1.      Definitions.

As used in this *Settlement Agreement*, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1      "*Action*" shall mean *In Re: Wilmington Trust Corp. ERISA Litigation*, Civ. No. 10-01114-SLR (D. Del. filed Dec. 20, 2010), pending in the United States District Court for the District of Delaware, and any and all cases now or hereafter consolidated therewith.

1.2      "*Appeal Proceeding*" shall mean any notices of appeal, appeals, petitions for certiorari or review by any appellate court or the Supreme Court.

1.3      "*Authorized Signer(s)*" has the meaning set forth and described in Section 7.1.1 herein.

1.4      "*Beneficiary(ies)*" has the meaning ascribed to the term in 29 U.S.C. § 1002(8).

1.5      "*CAFA*" shall mean the Class Action Fairness Act, 28 U.S.C. § 1715.

1.6      "*CAFA Notice*" shall mean notice of this proposed *Settlement* to the appropriate federal and state officials, as provided by *CAFA*.  The cost and expense associated with providing *CAFA Notice* shall be borne by Defendants.

1.7      "*CAFA Notice Recipients*" shall have the meaning set forth in Section 2.1.4.1.

1.8      "*Case Contribution Award*" shall mean any monetary amount awarded by the *Court* in recognition of the *Named Plaintiffs*' assistance in the prosecution of this *Action* and payable pursuant to Sections 9.3.2, 10.2, and 10.3 herein.  *Class Counsel* may ask for an amount not to exceed $10,000.00 for each *Named Plaintiff*.  Any such *Case Contribution Award* shall be

subject to the approval of the *Court* upon notice to the *Settlement Class* as set forth in Section 10.2 below.

 1.9 "*Claims*" has the meaning set forth in Section 3.2 herein.

 1.10 "*Class Counsel*" shall mean Stull, Stull & Brody and Gainey, McKenna & Egleston.

 1.11 "*Class Notice*" shall mean the forms of notice appended as Exhibits 1 and 2 to the form of *Preliminary Approval Order* attached hereto as Exhibit A.

 1.12 "*Class Period*" shall mean December 31, 2006 through and including May 13, 2011.

 1.13 "*Class Settlement Amount*" has the meaning set forth in Sections 7.1.2 and 7.2 herein.

 1.14 "*Complaint*" shall mean the First Amended Complaint filed in the *Action* on June 6, 2013, and any predecessor complaint filed in the *Action*.

 1.15 "*Court*" shall mean the United States District Court for the District of Delaware.

 1.16 "*Defendants*" shall mean *Wilmington Trust Corp.*, *WTC*, Gary E. Butler, Ted T. Cecala, Rebecca A. DePorte, Michael A. DiGregorio, William J. Farrell II, David R. Gibson, I. Gail Howard, Kevyn N. Rakowski, and Diane M. Sparks.

 1.17 "*Defendant Releasees*" shall mean: (i) *Defendants* and any other defendant previously named in the *Action*; (ii) each and all of *Defendants'* respective predecessors, successors, parent entities, subsidiaries, affiliates, partners, and controlling *Persons*, including but not limited to *M&T Bank*; (iii) each and all of (i) and (ii)'s respective past or present officers, directors, shareholders, principals, employees, insurers, accountants, agents, associates, heirs, executors, beneficiaries, estates, administrators, family members, and assigns; (iv) any *Person* who served as an attorney, advisor, trustee, sponsor, or named or functional fiduciary of the *Wilmington Trust Plan* or the *M&T Bank Plan* other than the *Independent Fiduciary*; and (v) any present and former *Representatives* of any of the foregoing.

 1.18 "*Defendant Releasors*" shall mean: (i) *Defendants* and any other defendant previously named in the *Action*; (ii) each and all of their respective predecessors, successors, parent entities, subsidiaries, affiliates, partners, and controlling *Persons*, including but not limited to *M&T Bank*; (iii) each and all of (i) and (ii)'s respective past or present officers, directors, shareholders, principals, employees, insurers, accountants, agents, associates, heirs, executors, beneficiaries, estates, administrators, family members, and assigns; (iv) any *Person* who served as an attorney, advisor, trustee, sponsor, or named or functional fiduciary of the *Wilmington Trust Plan* or the *M&T Bank Plan* other than the *Independent Fiduciary*; and (v) any present and former *Representatives* of any of the foregoing.

 1.19 "*Defendants' Counsel*" shall mean Groom Law Group, Chartered, and Skadden, Arps, Slate, Meagher & Flom LLP.

1.20    "*Distributable Net Proceeds*" has the meaning set forth in Section 9.3.6 herein.

1.21    "*Effective Date of Settlement*" shall mean the date on which all of the conditions to settlement set forth in Section 2 herein have been fully satisfied or waived and the *Settlement* shall have become *Final*.

1.22    "*ERISA*" shall mean the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*, including all regulations promulgated thereunder.

1.23    "*Escrow Account*" shall mean an account at a *Financial Institution* that is established for the deposit of any amounts relating to the *Settlement* as funded in accordance with Section 7.1.2 herein.

1.24    "*Escrow Agents*" shall mean the firms of Stull, Stull & Brody and Gainey McKenna & Egleston.

1.25    "*Fairness Hearing*" has the meaning set forth in Section 2.1.5 herein.

1.26    "*Final*" shall have the same meaning ascribed to "final" under 28 U.S.C. § 1291, and:  (a) the time has expired to file an appeal, motion for reargument, motion for rehearing, petition for a writ of certiorari or other writ ("*Review Proceeding*") with respect to a judicial ruling or order with no such *Review Proceeding* having been filed; or (b) if a *Review Proceeding* has been filed with respect to such judicial ruling or order, (i) the judicial ruling or order has been affirmed without material modification and with no further right of review, or (ii) such *Review Proceeding* has been denied or dismissed with no further right of review.

1.27    "*Final Order*" has the meaning set forth in Sections 2.1.5 and 2.2 herein and shall be in the form attached hereto as Exhibit B.

1.28    "*Financial Institution*" has the meaning set forth in Section 7.1.1 herein.

1.29    "*Independent Fiduciary*" shall mean a fiduciary of the *M&T Bank Plan* whose function is described in Section 2.4 herein.

1.30    "*Liaison Class Counsel*" shall mean Law Offices of Joseph J. Bodnar.

1.31    "*M&T Bank*" shall mean M&T Bank Corporation and its subsidiaries, affiliates, and partners.

1.32    "*M&T Bank Plan*" shall mean the M&T Bank Corporation Retirement Savings Plan.

1.33    "*Named Plaintiffs*" shall mean Julie Gray and James Bradford.

1.34    "*Objection*" shall mean any objection to this *Settlement Agreement* becoming *Final*, as described in Federal Rule of Civil Procedure 23(e)(5).

1.35    "*Participant(s)*" shall mean any individual(s) who was a participant, as the term *Participant* is defined in 29 U.S.C. § 1002(7), in the *Wilmington Trust Plan* at any time during the *Class Period.*

1.36    "*Parties*" shall mean *Named Plaintiffs* and *Defendants.*

1.37    "*Person(s)*" shall mean an individual, partnership, corporation, estate, trust, governmental entity or any other form of entity or organization.

1.38    "*Plaintiffs*" refers to the *Named Plaintiffs* and each member of the *Settlement Class* (at times referred to as "*Settlement Class Member(s).*")

1.39    "*Plaintiff Releasees*" has the meaning set forth in Section 3.3 herein.

1.40    "*Plaintiff Releasors*" has the meaning set forth in Section 3.1 herein.

1.41    "*Plan Administrator*" shall mean the Plan Administrator of the *M&T Bank Plan.*

1.42    "*Plan of Allocation*" shall mean the Plan of Allocation attached hereto as Exhibit C.

1.43    "*Preliminary Approval Order*" has the meaning set forth in Section 2.1.1 herein and shall be in the form attached hereto as Exhibit A.

1.44    "*Preliminary Approval Motion*" has the meaning set forth in Section 2.1.1 herein.

1.45    "*Protective Order*" shall mean the Parties' Stipulated Protective Order filed in this *Action* on August 30, 2013, and entered by the *Court* on September 5, 2013.

1.46    "*Released Claims*" has the meaning set forth in Section 3.2 herein.

1.47    "*Releases*" shall mean the releases set forth in Section 3 herein.

1.48    "*Representatives*" shall mean current or former representatives, including, but not limited to, current or former attorneys, agents, directors, officers, insurers, trustees, heirs, executors, advisors, contractors, assigns or employees.

1.49    "*Review Proceeding*" shall have the meaning set forth in Section 1.26.

1.50    "*Securities Action*" refers to the action alleging violations of the federal securities laws, to which certain of the *Defendants* in the above-captioned case are also defendants, *In Re: Wilmington Trust Securities Litigation*, Civ. No. 1:10-cv-00990-SLR (D. Del. filed Nov. 18, 2010).

1.51    "*Settlement*" shall mean the settlement to be consummated under this *Settlement Agreement* pursuant to the *Final Order.*

1.52    "*Settlement Administrator*" shall mean the person appointed as the *Settlement Administrator* in the *Preliminary Approval Order.*

1.53    "*Settlement Agreement*" shall mean this Class Action Settlement Agreement.

1.54    "*Settlement Class*" shall mean all *Persons*, other than *Defendants*, who were *Participants* in or *Beneficiaries* of the Wilmington Trust Thrift Savings Plan at any time during the period from December 31, 2006 through and including May 13, 2011 and whose Wilmington Trust Thrift Savings Plan accounts were invested in the Wilmington Trust Corporation Stock Fund at any time during the period from December 31, 2006 through and including May 13, 2011.

1.55    "*Settlement Fund*" has the meaning set forth and described in Section 7.1 herein.

1.56     "*Trustee*" shall mean the *M&T Bank Plan*'s trustee.

1.57    "*Wilmington Trust Plan*" refers to the Wilmington Trust Thrift Savings Plan, all predecessor plans, and any trust created under the foregoing plans.

1.58    "*Wilmington Trust Corp.*" refers to Wilmington Trust Corporation.

1.59    "*Wilmington Trust Stock Fund*" refers to the Wilmington Trust Corporation Stock Fund offered under the *Wilmington Trust Plan*.

1.60    "*WTC*" refers to Wilmington Trust Company.

2.    <u>Conditions to Finality of the *Settlement*.</u>

This *Settlement* shall be final when each of the following conditions in Sections 2.1 through 2.4 herein have been satisfied or waived.

2.1    <u>*Court* Approval.</u>  The *Settlement* shall have been approved by the *Court*, as provided for in Section 2 herein.  *Class Counsel* shall move the *Court* for an order and judgment approving this *Settlement Agreement* and the *Settlement* contemplated hereunder.  *Plaintiffs* shall recommend to the *Court* that such order and judgment be entered, *Defendants* will not object to such recommendation, and the *Parties* shall cooperate in good faith, which shall include all steps and efforts contemplated by this *Settlement Agreement*, all steps or efforts reasonably necessary to secure preliminary and final approval by the *Court* of the *Settlement*, and any other steps or efforts which may become necessary by order of the *Court* (unless such order materially modifies the terms of this *Settlement Agreement*) to carry out this *Settlement Agreement*, including the following:

2.1.1    <u>Motion for Preliminary Approval of *Settlement*.</u>  As soon as reasonably possible upon the full execution of this *Settlement Agreement* by the *Parties*, *Plaintiffs* will file a motion ("*Preliminary Approval Motion*") with the *Court* for an order (the "*Preliminary Approval Order*") substantially in the form annexed hereto as Exhibit A.

2.1.2    *Settlement Class* Certification.

2.1.2.1 For purposes of this *Settlement* only, the *Parties* agree to stipulate to the certification of the *Settlement Class* pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

2.1.2.2 The *Court* shall have certified the *Settlement Class* as a non-opt-out class for purposes of this *Settlement* only pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.  The *Settlement Class* will have been certified with the *Named Plaintiffs* as the named *Settlement* representatives as set forth in Exhibits A and B.  The *Settlement Class* will have been certified with Stull, Stull & Brody and Gainey, McKenna & Egleston, as *Class Counsel*.

2.1.3    Issuance of *Class Notice*.  On the date and in the manner set by the *Court* in its *Preliminary Approval Order*, *Plaintiffs* shall cause the *Class Notice* to be transmitted in the form and manner approved by the *Court* as directed in the *Preliminary Approval Order*.

2.1.4    Compliance with *CAFA*.

2.1.4.1 No later than ten (10) days following the filing of the *Preliminary Approval Motion*, *Defendants* shall serve notice of the proposed *Settlement* upon the appropriate State official of each State in which a *Settlement Class Member* resides and the appropriate Federal official(s), as required by *CAFA* ("*CAFA Notice Recipients*").

2.1.4.2 The *Court* shall have determined that *Defendants* complied with *CAFA* and its notice obligations by providing appropriate officials with information about the *Settlement*.

2.1.5    The *Fairness Hearing*.  Upon entry of the *Preliminary Approval Order*, the *Parties* contemplate that the *Court* will schedule and then conduct a hearing at which the *Court* will determine whether the *Settlement* is fair, reasonable, and adequate (the "*Fairness Hearing*"*).  Specifically, *Plaintiffs* will request that the *Court* determine on or after the date of the *Fairness Hearing*: (i) whether to enter judgment finally approving the *Settlement* and dismissing with prejudice the *Action* (which judgment is referred to herein as the "*Final Order*"); (ii) whether the *Settlement Class* should be certified as a non-opt-out class meeting the applicable requirement for settlement classes under Federal Rule of Civil Procedure 23(b)(1); (iii) whether the requirements of Federal Rule of Civil Procedure 23(e)  and due process have been satisfied in connection with distribution of the *Class Notices* to *Settlement Class Members*; (iv) whether the requirements of *CAFA* have been satisfied; (v) whether the distribution of the *Settlement Fund* as provided in the *Plan of Allocation* should be approved; and (vi) what attorneys' fees and litigation expenses should be awarded to *Class Counsel*, and what *Case Contribution Award* should be awarded to the *Named Plaintiffs*, as contemplated by Section 10 herein.

2.2    *Finality of Final Order.*  The *Court* shall have entered the Order and Final Judgment substantially in the form attached hereto as Exhibit B, as more fully discussed in Sections 2.1.5 herein (the "*Final Order*") and the *Final Order* shall have become *Final*, as provided in Section 1.26 herein.

2.3    *Funding of Class Settlement Amount.*  *Defendants* shall have deposited or shall have caused the *Class Settlement Amount* to be deposited at the time prescribed by, and otherwise as provided for, in Section 7.1 herein.

2.4    *Settlement Authorized by Independent Fiduciary.*

2.4.1    At least seven (7) business days prior to the *Fairness Hearing*, an *Independent Fiduciary* shall have authorized the *Settlement* in accordance with Prohibited Transaction Class Exemption 2003-39, as amended.  *Defendants* will bear up to $40,000.00 of the costs associated with seeking such authorization; costs, if any, in excess of $40,000.00 shall be charged to the *Settlement Fund*.  If the *Independent Fiduciary* determines that costs associated with seeking such authorization will exceed $40,000.00, the *Independent Fiduciary* will promptly notify *Defendants' Counsel*.  Within one (1) week of receiving this notification, *Defendants' Counsel* will provide to *Class Counsel* an estimate of the extent to which the cost will exceed $40,000.00.

2.4.2    If the *Independent Fiduciary* disapproves or otherwise does not authorize the *Settlement*, then the *Settlement Agreement* shall terminate and become null and void and the provisions of Section 11.2 herein shall apply; *provided*, however, that the *Settlement Agreement* shall not terminate and become null and void and the provisions of Section 11.2 herein shall not apply if the *Parties*, through their counsel, agree in writing prior to the *Fairness Hearing* to modify the *Settlement* to satisfy objections by the *Independent Fiduciary* to the *Settlement*, or, at the sole election of *Defendants*, *Defendants* agree that Section 2.4 herein shall not be a condition precedent to the *Settlement* becoming final.

2.5    Intervention by the Department of Labor.  If the Secretary of the United States Department of Labor disapproves of or opposes the *Settlement* of this matter, moves to intervene in the *Action* to oppose the *Settlement* of the matter, or files his or her own lawsuit against any of the *Defendants* asserting similar allegations and claims as those asserted by *Plaintiffs* in the *Action* prior to entry of the *Final Order* in this case, *Defendants* shall have the right to terminate this *Settlement Agreement* in their sole discretion.

3.    *Releases.*

3.1    *Releases of the Defendant Releasees.*  Subject to Section 11 herein, effective upon the entry of the *Final Order* by the *Court* and regardless of whether the *Final Order* has become *Final*, *Plaintiffs* on behalf of themselves, their *Beneficiaries*, heirs, executors, *Representatives*, agents and assigns and on behalf of the *Wilmington Trust Plan* and the *M&T Bank Plan* (collectively "*Plaintiff Releasors*") absolutely and unconditionally release and forever discharge *Defendant Releasees* from *Released Claims* that *Plaintiffs* directly, indirectly, derivatively, or in

any other capacity ever had, now have or hereafter may have against *Defendant Releasees*. Notwithstanding any other provision hereof, the *Releases* set forth in Section 3 herein will remain in effect during the pendency of any *Appeal Proceeding*.  Only if any *Appeal Proceeding* results in a reversal or vacation of the *Final Order* will the *Releases* set forth in Section 3 herein become void and lose their effect, at which time the provisions of Section 11 will become effective.

3.2     *Released Claims.*  The *Released Claims* shall be: any and all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief), whether accrued or not, whether against *Defendant Releasees* in their capacity as individuals or in their capacities as fiduciaries, whether already acquired or acquired in the future, whether known or unknown, in law or equity (collectively, "*Claims*") which were or could have been asserted in the *Complaint* by or on behalf of *Plaintiffs* concerning the matters alleged in the *Complaint* or referenced in the *Action*, including but not limited to any *Claims* (i) related to any action or inaction relating to *Wilmington Trust Corp.* stock held in the *Wilmington Trust Plan*; (ii) related to the disclosure or non-disclosure of information that may affect the price or value of the *Wilmington Trust Corp.* stock in the *Wilmington Trust Plan*; or (iii) that would be barred by principles of *res judicata* or collateral estoppel had the *Claims* asserted in the *Complaint* been fully litigated and resulted in a *Final* judgment or order.  In the event that any court with original or appellate jurisdiction over this *Action* issues a *Final* determination that any portion of Section 3 herein is not enforceable, the *Parties* may (but shall not be required to) jointly agree in writing to modify Section 3 herein to conform with such determination.

3.3     *Defendant Releasors' Releases* of *Named Plaintiffs*, the *Settlement Class* and *Class Counsel.*  Subject to Section 11 herein, effective upon the entry of the *Final Order* by the *Court* and regardless of whether the *Final Order* has become *Final*, *Defendant Releasors* absolutely and unconditionally release and forever discharge the *Named Plaintiffs*, the *Settlement Class* and *Class Counsel* and *Liaison Class Counsel*, as well as any other counsel or plaintiff who was included in any complaint filed in the *Action* (collectively, the "*Plaintiff Releasees*") from any and all *Claims* relating to the institution or prosecution of the *Action*.

3.4     The *Parties* understand and agree that the *Releases* to be given pursuant to this *Settlement Agreement* shall be effective as a bar to any and all currently unsuspected, unknown, or partially known *Claims* within the scope of the *Releases*.  Accordingly, *Defendant Releasors* and *Plaintiff Releasors* explicitly acknowledge and waive any and all rights they may have under Cal. Civ. Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, including, without limitation, the claims discussed in Section 3.5 herein.  Cal. Civ. Code § 1542 provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

3.4.1    *Plaintiff Releasor*s and *Defendant Releasors* each hereby acknowledge that the foregoing waiver was separately bargained for and that neither *Plaintiff Releasors*, on the one hand, nor *Defendant Releasors*, on the other, would enter into this *Settlement Agreement* unless it included a release of all of the *Released Claims*, including unknown *Claims*.  *Plaintiff Releasors* and *Defendant Releasors* each expressly agree that all release provisions in this *Settlement Agreement* shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected, and future *Claims*, demands, and causes of action.  *Plaintiff Releasors* and *Defendant Releasors* assume for themselves, the risk of his, her or its respective subsequent discovery of or understanding of any matter, fact, or law, that if now known or understood, would in any respect have affected his, her, or its entering into this *Settlement Agreement.*

> 3.4.1.1 The assumption of risk as to changes of law expressly includes the Supreme Court's opinion in *Fifth Third Bancorp v. Dudenhoeffer*, 12-751, which was expected during the *Parties'* negotiation of this *Settlement*, and which was issued on June 25, 2014.  In negotiating the *Settlement*, *Defendants' Counsel* and *Class Counsel* were familiar with the briefing and oral argument in *Fifth Third Bancorp v. Dudenhoeffer*, and weighed the risks and benefits thereof.  The *Parties* agreed that they would use their best efforts to make sure that the *Settlement Agreement* becomes *Final* regardless of the outcome in *Fifth Third Bancorp v. Dudenhoeffer*.

3.5     Scope of *Releases.*

3.5.1    The *Releases* set forth in Section 3 herein are not intended to include the release of any rights or duties arising out of this *Settlement Agreement*, including the express covenants and obligations in this *Settlement Agreement.*

3.5.2    The *Releases* set forth in Section 3 herein exclude (i) any claims under federal or state securities laws that are or have been alleged, or in the future may be alleged through an amended pleading, in the *Securities Action*; and (ii) with respect to any putative class members who validly opt out of the *Securities Action*, any state or federal securities law claims that they may assert that arise out of any of the same acts, omissions, facts, matters, transactions, or occurrences alleged in the *Securities Action.*

> 3.5.2.1 By excluding the *Securities Action* from the *Released Claims*, no *Party* is waiving or acknowledging any defense that may exist to any claim asserted in the *Securities Action*, including, but not limited to, defenses based on the statute of limitations or other time-bar, and no party is, by inference or implication, enlarging the scope of claims released or discharged as *Released Claims*.  Any questions as to whether and to what extent, if any, payments to the *M&T Bank Plan* or *Settlement Class Members* pursuant to this *Settlement Agreement* can be asserted by a defendant in the *Securities Action* to reduce the amount otherwise recoverable by such *Settlement Class Member* in the *Securities Action* are to be determined in the *Securities Action*, and the *Parties* reserve all

rights with respect to positions they may take on those questions in the *Securities Action*.

3.5.2.2 *Class Counsel* shall have no duties to the *Wilmington Trust Plan*, the *M&T Bank Plan*, the *Settlement Class*, or to any *Settlement Class Member* to collect any monies that may be recovered as a result of the *Securities Action*.

4. <u>*Covenants.*</u>

The *Parties* covenant and agree as follows:

4.1   <u>Covenants Not to Sue.</u>

4.1.1   *Named Plaintiffs* covenant and agree, for themselves and *Plaintiff Releasors*: (i) not to file against any *Defendant Releasee* any *Claim* based on, relating to, or arising from any *Released Claim*; and (ii) that the foregoing covenant and agreement shall be a complete defense to any such *Claims* against any of the respective *Defendant Releasees*.

4.1.2   *Defendant Releasors* covenant and agree (i) not to file against any *Plaintiff Releasee* any *Claim* released under Section 3.3 herein; and (ii) that the foregoing covenant and agreement shall be a complete defense to any such *Claims* against any of the respective *Plaintiff Releasees*.

4.2   <u>Taxation of *Settlement Fund.*</u>  *Plaintiffs* acknowledge that *Defendant Releasees* have no responsibility for any taxes due on the *Settlement Fund*, on earnings from the *Settlement Fund*, or on any amounts that *Plaintiffs* or *Class Counsel* receive from the *Settlement Fund*. Nothing herein shall constitute an admission or representation that any such taxes will or will not be due.  The amounts paid to *Settlement Class Members* allocated pursuant to the *Plan of Allocation* will be treated as restorative payments consistent with Revenue Ruling 2002-45, 2002-2 C.B 116.

4.3   <u>Cooperation.</u>  The *Parties* shall cooperate in good faith, including by taking all steps and efforts contemplated by this *Settlement Agreement* and all steps reasonably necessary to secure preliminary and final approval by the *Court* of the *Settlement* as set forth above in Sections 2.1 and 2.2 herein.

4.3.1   After entry of the *Preliminary Approval Order.  Defendants*, within forty-five (45) calendar days, will provide the *Settlement Administrator* with the names and last known addresses of *Settlement Class Members* and timely respond to *Plaintiffs'* reasonable written requests for accessible data in the *Defendants*' custody necessary to provide *Class Notice* or to implement or determine the feasibility of a proposed *Plan of Allocation*.  The *Parties* acknowledge that any information provided by *Defendants* to the *Settlement Administrator* shall be treated as "Confidential" or "Highly Confidential" under the *Protective Order*, provided that the *Settlement Administrator* expressly acknowledges that the information may be used solely to deliver the *Class Notice* and/or implement the *Settlement*, including the *Plan of Allocation*.  The *Settlement Administrator* will provide to *Defendants* information it gathers about more current

addresses, beneficiaries, and/or the death or incapacitation of a *Settlement Class Member,* as necessary to implement the *Plan of Allocation* and to distribute the *Distributable Net Proceeds* (as defined in Section 9.3.6) pursuant to the *Final Plan of Allocation* to *Settlement Class Members.*

4.4     Request by the *Court* or the *Named Plaintiffs* for Information.  If the *Court* deems it necessary for the *Parties* to supply any information as part of the *Court*'s review of the *Settlement Agreement*, the *Parties* will reasonably expedite provision of such information as directed by the *Court*.  If it is necessary for *Defendants* to supply information in order to respond to any timely filed *Objection*, *Defendants* will reasonably expedite provision of such information.  Any disputes regarding requests for information by the *Parties* shall be decided by the *Court*.

5.     Representations and Warranties.

5.1     Parties' Representations and Warranties.  The *Parties*, and each of them, represent and warrant as follows, and each *Party* acknowledges that each other *Party* is relying on these representations and warranties in entering into this *Settlement Agreement*:

5.1.1     That *Plaintiffs* and *Class Counsel* have conducted an appropriate investigation and discovery, and have diligently litigated this case pursuant to the *Court*'s orders.

5.1.2     That none of *Named Plaintiffs*' claims or causes of action referred to herein or that could have been alleged against any of the *Defendant Releasees* have been or will be assigned, encumbered or in any manner transferred in whole or in part.

5.1.3     That *Named Plaintiffs* shall have no surviving claim or cause of action against any of the *Defendant Releasees* with respect to the *Released Claims*.

5.1.4     That the *Parties* are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; that in executing this *Settlement Agreement* they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and *Claims* hereunder and regarding all matters which relate in any way to the subject matter hereof.  Each *Party* assumes the risk of mistake as to facts or law, and as to changes of law.

5.1.5     That the Parties have carefully read the contents of this *Settlement Agreement*, and this *Settlement Agreement* is signed freely by each *Person* executing this *Settlement Agreement* on behalf of each of the *Parties*.  The *Parties*, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the *Settlement*, this *Settlement Agreement*, and all of the matters pertaining thereto, as he, she, or it deems necessary.

5.2     Signatories' Representations and Warranties.  Each *Person* executing this *Settlement Agreement* on behalf of any other *Person* does hereby personally represent and

warrant that he or she has the authority to execute this *Settlement Agreement* on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

6.      <u>No Admission of Liability.</u>

6.1        Except as set forth in Paragraph 6.2 below, this *Settlement Agreement*, whether or not consummated, and any discussions, negotiations, proceedings or agreements relating to the *Settlement Agreement*, the *Settlement*, and any matters arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the *Parties* for any purpose, and in particular:

6.1.1    do not constitute and shall not be deemed to constitute any finding of fiduciary status under *ERISA* or wrongdoing by any of the *Defendant Releasees*, or give rise to any inference of fiduciary status under *ERISA*;

6.1.2    do not constitute, and shall not be offered or received against or to the prejudice of *Defendant Releasees* as evidence of any presumption, concession or admission by *Defendant Releasees* with respect to the truth of any allegation by *Plaintiff Releasors*, or of the validity of any claim that has been or could have been asserted in the *Action* or in any litigation, including but not limited to the *Released Claims*, or of any liability, damages, negligence, fault, misrepresentation, omission, or wrongdoing of *Defendant Releasees*;

6.1.3    do not constitute, and shall not be offered by or received against or to the prejudice of *Defendant Releasees*, in any other civil, criminal, or administrative action or proceeding, or arbitration, other than such proceedings as may be necessary to effectuate the provisions of this *Settlement Agreement*;

6.1.4    do not constitute, and shall not be construed against *Defendant Releasees* as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

6.1.5    do not constitute, and shall not be construed as or received in evidence as, an admission, concession, or presumption against *Plaintiff Releasees* that any of their claims are without merit or infirm, or that damages recoverable under the *Complaint* would not have exceeded the *Class Settlement Amount*.

6.2        *Defendant Releasees* may file this *Settlement Agreement* and/or the *Final Order* in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate the liability protection granted them under any applicable insurance policies.  A *Party* may file this *Settlement Agreement* and/or the *Final Order* in any action that the *Party* brings against another *Party* to enforce the terms of this *Settlement Agreement* and/or the *Final Order*.  All *Parties* submit to the exclusive jurisdiction of the *Court* for purposes of implementing and enforcing the *Settlement*.

7.    The *Settlement Fund.*

7.1    The *Settlement Fund.*

7.1.1    Not later than ten (10) business days after the entry of the *Preliminary Approval Order*, the *Escrow Agents* shall establish at a financial institution (the "*Financial Institution*") a settlement fund account (the "*Settlement Fund*").  *Class Counsel* shall promptly notify *Defendants' Counsel* of the date of the establishment of the *Settlement Fund* and provide to *Defendants' Counsel* complete and accurate wiring instructions, payment address, and a complete and accurate W-9 form for the *Settlement Fund*.  The monies of the *Settlement Fund* shall be considered a common fund created as a result of the *Action*, with *Distributable Net Proceeds* as described in Section 9.3.6 herein to be paid into the *M&T Bank Plan* and allocated or distributed among *Settlement Class Members* according to the *Plan of Allocation*.  All funds held by the *Escrow Agents* in the *Settlement Fund* pursuant to this *Settlement Agreement* may be deemed and considered to be in the legal custody of the *Court* until such time as such funds may be distributed pursuant to further order(s) of the *Court* or pursuant to the terms of this *Settlement*.  *Class Counsel* shall designate at least two (2) person with signature authority over the *Settlement Fund* (the "*Authorized Signers*"), and shall direct the *Financial Institution* to make distributions from the *Settlement Fund* only in accordance with this *Settlement Agreement* upon written direction from the *Authorized Signers*.  The *Authorized Signers* shall not authorize any distributions except as permitted under this *Settlement Agreement* or as otherwise authorized by the *Court*.

7.1.2    In consideration of, and expressly in exchange for, all of the agreements set forth in this *Settlement Agreement*, within ten (10) business days after notification of the establishment of the *Settlement Fund* (or upon such an alternate date agreed upon by the *Parties*) and the receipt of the wiring instructions, payment address, and W-9 form provided for in Section 7.1.1 herein, *Defendant Releasees* shall deposit or shall cause to be deposited the sum of $3,000,000.00 in the *Settlement Fund* (the "*Class Settlement Amount*").

7.1.3    Except as provided herein, the *Settlement Fund* shall bear interest and shall be invested only in United States Treasury securities and mutual funds or money market accounts that invest exclusively in the foregoing securities.

7.1.4    The *Settlement Fund* shall be structured and managed to qualify as a qualified settlement fund under Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder.  The *Settlement Fund* will pay any federal, state and local taxes that may apply to the income of the *Settlement Fund*.  The *Escrow Agent*s shall arrange for the preparation and filing of all tax reports and tax returns required to be filed by the *Settlement Fund* of any taxes owed.  The *Escrow Agent*s shall be authorized to retain a certified public accounting firm for those purposes.  The *Settlement Administrator* shall assist the *Escrow Agents* in providing *Class Notice* and implementing the *Plan of Allocation*.  The *Settlement Administrator* will calculate the allocations described in Section 9.3.6, will be available to answer questions from *Settlement Class Members* and their beneficiaries, and will handle administrative matters, such as banking,

13

tax and escrow matters, which the *Escrow Agents* may encounter in the course of the *Settlement* provided, however, that the cost and expense of the *Settlement Administrator* (as well as the cost and expense of any CPA firm) are paid from the *Settlement Fund*, as provided for in Section 10.1.  All taxes on the income of the *Settlement Fund* and tax-related expenses incurred in connection with the taxation of the *Settlement Fund* shall be paid solely out of the *Settlement Fund*, shall be considered a cost of administration of the *Settlement*, and shall be timely paid without further order of the *Court*.  Any fees and expenses of the *Financial Institution*, and of professional advisors engaged by the *Financial Institution* in connection with the *Settlement Fund*, shall be funded solely from the *Settlement Fund* and shall be paid without further order of the *Court*.

7.1.5   The *Settlement Fund* shall be deemed to be in the custody of the *Court* held exclusively for the purposes described in Section 9 herein until such time as the *Settlement Fund* shall be disbursed pursuant to this *Settlement Agreement* and/or further order of the *Court*.

7.1.6   The *Parties* acknowledge and agree that *Defendant Releasees* shall have no authority, control or liability in connection with the design, management, administration, investment, maintenance, or control of the *Settlement Fund*, or for any expenses the *Settlement Fund* may incur or for any taxes that may be payable by the *Settlement Fund*, except as set forth in Section 2.4 herein.

7.2     The *Class Settlement Amount*.  The *Class Settlement Amount*, together with the costs of the *Independent Fiduciary* provided for in Section 2.4 herein, shall be the full and sole monetary contribution made by or on behalf of *Defendant Releasees* in connection with the *Settlement* effected between *Plaintiff Releasors* and *Defendant Releasees* under this *Settlement Agreement*.  The *Class Settlement Amount* specifically covers any claims for attorneys' fees and litigation expenses by *Plaintiffs*, on their own behalf and on behalf of the *Settlement Class*, as well as any *Case Contribution Awards* to the *Named Plaintiffs*.  Except as otherwise specified in this *Settlement Agreement*, the *Parties* shall bear their own costs and expenses (including attorneys' fees) in connection with effectuating the *Settlement* and securing necessary *Court* orders and approvals with respect to the same.

8.     Costs of *Class Notice*.  All costs incurred in connection with *Class Notice*, including the reasonable costs incurred in generating a list of the names, U.S. mail addresses, and electronic mail addresses of individuals entitled to *Class Notice*, shall be payable from the *Settlement Fund*.

9.     Payments From the *Settlement Fund*.

9.1     Establishment of Effective Date of *Settlement*.  If *Named Plaintiffs* and *Defendants* disagree as to whether each and every condition set forth in Section 2 herein has been satisfied or waived, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to the *Court*, which shall retain jurisdiction for this purpose.  No portion of the *Class Settlement Amount* shall be distributed in the event of such a dispute pending the *Court*'s ruling.  Disbursement shall thereafter be made by the *Financial Institution* pursuant to the *Court*'s order.

9.2      Expenses of *Class Notice*.  *Class Counsel* shall direct the *Financial Institution* in writing to disburse from the *Settlement Fund* the payment of reasonable costs associated with the *Class Notice*.  If the *Settlement Agreement* is terminated or does not become *Final* for any reason after the expenditure of funds to pay for the reasonable costs associated with the *Class Notice*, *Class Counsel* shall be obligated to return any funds remaining in the *Settlement Fund* and, upon request of *Defendants' Counsel*, provide an accounting of disbursements from the *Settlement Fund*.

9.3      Disbursements from *Settlement Fund*.  *Class Counsel* shall direct the *Financial Institution* to disburse money from the *Settlement Fund* as follows:

9.3.1    For Attorneys' Fees and Litigation Expenses.  As provided in Sections 10.1 and 10.3 herein.

9.3.2    For the *Named Plaintiffs' Case Contribution Award.*  As provided in Sections 10.2 and 10.3 herein.

9.3.3    For Taxes and Expenses of the *Settlement Fund.*  As provided in Sections 4.2 and 7.1.4 herein.

9.3.4    For Fees and Expenses of the *Independent Fiduciary.*  Subject to Section 2.4, *Class Counsel* shall direct the *Financial Institution* to disburse money from the *Settlement Fund* to pay the reasonable fees and expenses, if any, of the *Independent Fiduciary* (which shall include any attorneys' fees of the *Independent Fiduciary*) that are in excess of $40,000.00.

9.3.5    For Fees and Expenses of the *Settlement Administrator*.  *Class Counsel* shall direct the *Financial Institution* to disburse money from the *Settlement Fund* to pay the reasonable fees and expenses of the *Settlement Administrator*.  *Class Counsel* will provide *Defendants' Counsel* with an accounting of the disbursements made to the *Settlement Administrator*.

9.3.6    For the *Plan of Allocation.*  Upon the *Final Order* becoming *Final* as provided in Sections 2.1.5, and 2.2 herein, and after the amounts payable pursuant to Sections 9.3 and 10 herein have been determined and disbursed, *Class Counsel* shall direct the *Financial Institution* to disburse the remaining amount in the *Settlement Fund* (the "*Distributable Net Proceeds*") to the *Trustee*.  The *Plan Administrator* shall direct the *M&T Bank Plan*'s recordkeeper or another entity with appropriate authority to allocate the *Distributable Net Proceeds* pursuant to a report to be provided by the *Settlement Administrator* that identifies the amount or a percentage of the *Distributable Net Proceeds* to be allocated to each *Settlement Class Member*.  The *Settlement Administrator* shall provide a copy of the report to the *Plan Administrator* with a copy to *Defendants' Counsel* and *Class Counsel*, except the report as provided to *Class Counsel* shall be redacted so as to only provide the last four digits of each participant's social security number.  *Defendant Releasees* shall have no liability in the event of any failure by the recordkeeper to follow directions from the *Plan Administrator* pursuant to this

Section 9.3.6, provided that *Defendants* shall assist *Class Counsel* in seeking to enforce such directions.

10.      <u>Attorneys' Fees and Litigation Expenses and *Case Contribution Award* to *Named Plaintiffs*.</u>

    10.1     <u>Payment of Attorneys' Fees and Litigation Expenses.</u> As provided in Section 2.1.5 herein, and pursuant to the common fund doctrine and/or any applicable statutory fee provision, *Class Counsel* may apply to the *Court* for an award of attorneys' fees, and for reimbursement of litigation expenses, excluding the cost and expense of the *Settlement Administrator* or other service company retained by *Class Counsel* to assist in implementation of the *Plan of Allocation* or of the *Settlement*, in an amount not exceeding 33 1/3 % of the *Settlement Amount*. *Class Counsel* shall be entitled to receive such attorneys' fees and litigation expenses from the *Settlement Fund* to the extent awarded by the *Court* and agrees not to seek from the *Court* an award of attorneys' fees and litigation expenses in excess of this amount. *Defendants* shall not oppose *Class Counsel*'s application for attorneys' fees and litigation expenses, provided that the application for attorneys' fees and litigation expenses does not exceed 33 1/3% of the *Settlement Amount*, and acknowledge that these matters are left to the sound discretion of the *Court*. *Defendant Releasees* shall have no responsibility for payment of attorneys' fees and/or litigation expenses to *Class Counsel* above any payment from the *Settlement Fund*.

    10.2     <u>Payment of *Case Contribution Award*.</u> As provided in Section 2.1.5 herein, *Class Counsel* may apply to the *Court* for a *Case Contribution Award* to *Named Plaintiffs* as consideration for their time and effort devoted to the prosecution of the *Action* in an amount of up to $10,000.00 per *Named Plaintiff*. *Named Plaintiffs* shall be entitled to receive an award of such expenses from the *Settlement Fund* to the extent ordered by the *Court* and agree not to seek from the *Court* an award of expenses in excess of this amount. *Defendants* shall not oppose the application for a *Case Contribution Award* to *Named Plaintiffs*, provided that the application does not exceed $10,000.00 per *Named Plaintiff*. *Defendant Releasees* shall have no responsibility for payment of any *Case Contribution Award* above any payment from the *Settlement Fund*.

    10.3     <u>Disbursement of Attorneys' Fees and Litigation Expenses and *Case Contribution Award* to *Named Plaintiffs*.</u> Upon the entry by the *Court* of an order approving the payment of attorneys' fees and litigation expenses from the *Settlement Fund* and/or an order allowing the payment of *Case Contribution Awards* to the *Named Plaintiffs*, *Class Counsel* may instruct the *Financial Institution* in writing to disburse such payments from the *Settlement Fund* in accordance with the *Court*'s order. The *Financial Institution* shall disburse such amounts in accordance with the *Court*'s order and *Class Counsel*'s instructions. In the event that *Class Counsel* seeks to have any *Court*-approved attorneys' fees and litigation expenses paid before the *Effective Date*, the *Financial Institution* shall not disburse such attorneys' fees and litigation expenses unless *Class Counsel* provides a letter of credit satisfactory to *Defendants*. If at the time of any disbursement from the *Settlement Fund* there shall be a pending application for attorneys' fees or litigation expenses or *Case Contribution Award*, there shall be reserved in the *Settlement Fund* an amount equal to the amount of the pending application, until such time as the *Court* shall rule upon such application.

10.4    The procedure for and allowance or disallowance by the *Court* of an application for attorneys' fees, litigation expenses, or the *Case Contribution Award* are not part of the *Settlement* set forth in this *Settlement Agreement*, and are separate from the *Court*'s consideration of the fairness, reasonableness and adequacy of the *Settlement* set forth in the *Settlement Agreement*, and any order or proceeding relating to any application for attorneys' fees, litigation expenses, or the *Case Contribution Award*, including an award of attorneys' fees and litigation expenses in an amount less than the amount requested by *Class Counsel*, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the *Settlement Agreement*, or affect or delay the finality of the *Final Order* approving the *Settlement Agreement* and the *Settlement* set forth herein. *Plaintiffs* and *Class Counsel* may not cancel or terminate the *Settlement Agreement* or the *Settlement* in accordance with Section 11 herein or otherwise based on the *Court*'s or any appellate court's ruling with respect to attorneys' fees, litigation expenses, or the *Case Contribution Award* in the *Action*.

11.     Termination of the Settlement Agreement.

11.1    Termination. This Settlement Agreement may be terminated if (i) the *Court* declines to enter the *Final Order*, (ii) the *Final Order* entered by the *Court* is reversed or modified in any material respect by any *Appeal Proceeding*, provided that the terminating party, within fourteen (14) days from the date of such event, furnishes written notice to *Class Counsel* or *Defendants' Counsel*, as the case may be, of the termination of this *Settlement*, specifying the terms modified or not approved that give rise to the right to terminate, or (iii) the *Independent Fiduciary* does not authorize the *Settlement* as provided in Section 2.4 herein.

11.2    Consequences of Termination of the *Settlement Agreement*.  If the *Settlement Agreement* is terminated, the following shall occur:

11.2.1  *Class Counsel* and *Defendants' Counsel* shall within five (5) business days after the date of termination of the *Settlement Agreement* jointly notify the *Financial Institution* in writing to return within five (5) business days to *Defendants* the amount contributed by them to the *Settlement Fund*, with all net income earned thereon, after deduction of the amount disbursed or incurred for any necessary taxes and expenses set forth in Sections 4.2 and 7.1.4 herein, and any amount disbursed or incurred in connection with *Class Notice* as set forth in Section 9.2 herein.  The *Financial Institution* shall fully and finally fulfill any tax obligations of the Settlement Fund as set forth in Sections 4.2 and 7.1.4 herein.

11.2.2  The *Action* shall for all purposes revert to its status as of the day immediately before the *Settlement Agreement* was executed by the *Parties* and the *Parties* shall request a scheduling conference with the *Court*.  The *Parties* also agree that when requesting an amended schedule from the Court, no party will contend that the other has failed to comply, or otherwise seek to take advantage of a party's not complying, with dates in any scheduling order previously entered by the *Court*.  In any subsequent proceeding, the terms of this *Settlement Agreement* shall not constitute nor be construed as an admission by any *Party*, nor be used against any *Party*, in any manner, whether as evidence or argument.

11.2.3  All provisions of this *Settlement Agreement* shall be null and void except as otherwise provided herein.

12.  Miscellaneous Provisions.

12.1  Jurisdiction.  The *Court* shall have jurisdiction over the *Parties* and the claims asserted in the *Action* as stated in the *Final Order*.  The *Court* shall retain jurisdiction over this *Action* to resolve any dispute that may arise regarding the *Settlement Agreement*, or the *Final Order* or *Class Notice* referenced in Section 2 herein, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the *Settlement Agreement*.

12.2  Communications Regarding this *Settlement Agreement.*

12.2.1  Press Releases.  The *Parties* shall agree on the language of any press release announcing or relating to the *Settlement Agreement*.

12.2.2  Required Disclosures.  The *Parties* acknowledge and agree that (i) they shall be authorized to disclose the fact of the *Settlement* and the *Settlement Amount* and (ii) they may make such public filings and accompanying public statements they may be required to make under applicable law concerning the *Settlement* upon execution of this *Settlement Agreement* and the filing of this *Settlement Agreement* with the *Court* for preliminary approval.  Nothing herein shall preclude *Wilmington Trust Corp.*, *WTC*, or *M&T Bank* from advising the Securities and Exchange Commission, the Department of Labor, or other regulators of the *Settlement* in this *Action*.

12.3  Full Resolution.  The *Parties* to this *Settlement Agreement* intend the *Settlement* of the *Action* to be the full, final and complete resolution of the *Plaintiff Releasors*' *Released Claims* and the *Defendant Releasors*' released *Claims*.  Accordingly, the *Parties* agree not to assert in any forum that the *Action* was brought, prosecuted or defended in bad faith or without a reasonable basis.  The *Parties* and their counsel agree that each has complied fully with Rule 11 of the Federal Rules of Civil Procedure in connection with the maintenance, prosecution, defense and settlement of the *Action* and shall not make any applications for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this *Action*.  The *Parties* agree that the *Class Settlement Amount* and the other terms of the *Settlement* were negotiated at arm's-length in good faith by the *Parties* and their respective counsel, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

12.4  Governing Law.  The construction, interpretation, operation, effect and validity of this *Settlement Agreement*, and all documents necessary to effectuate it, shall be governed by the laws of the State of Delaware without regard to conflicts of laws, except to the extent that federal law preempts state law.

12.5  Severability.  The provisions of this *Settlement Agreement* are not severable.

12.6    Destruction or Return of Protected Materials.  Within sixty (60) court days after the *Final Order* becomes *Final*, the Parties shall fully comply with the applicable provisions of the *Protective Order* concerning the destruction or return of protected materials.

12.7    Amendment.  Before entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Parties*.  Following entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed on behalf of all *Parties* and approved by the *Court*.  Amendments or modifications may be made without notice to the *Settlement Class* unless notice is required by law or the *Court*.

12.7.1    Extensions of Time.  Without further order of the *Court*, the *Parties* may agree to reasonable extensions of time to carry out any of the provisions on this *Settlement Agreement* where such extensions are of deadlines imposed by the *Parties*, not the *Court*.

12.8    Waiver.  The provisions of this *Settlement Agreement* may be waived only by an instrument in writing executed by the waiving party.  The waiver by any party of any breach of this *Settlement Agreement* shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this *Settlement Agreement*.

12.9    Privilege.  Nothing in this *Settlement Agreement*, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

12.10    Construction.  None of the *Parties* hereto shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.  The *Parties* specifically recognize that all *Parties* have contributed substantially and materially to the preparation of this *Settlement Agreement*.

12.11    Principles of Interpretation.  The following principles of interpretation apply to this *Settlement Agreement:*

12.11.1    Headings.  The headings of this *Settlement Agreement* are for reference purposes only and do not affect in any way the meaning or interpretation of this *Settlement Agreement.*

12.11.2    Singular and Plural.  Definitions apply to the singular and plural forms of each term defined.

12.11.3    Gender.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

12.11.4    References to a *Person*.  References to a *Person* are also to the *Person*'s permitted successors, assigns and heirs.

12.11.5    Terms of Inclusion.  Whenever the words "include," "includes," or "including" are used in this *Settlement Agreement*, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

12.12   Further Assurances.  Each of the *Parties* agrees, without further consideration, and as part of finalizing the *Settlement* hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this *Settlement Agreement*, so long as such documents and actions are consistent with the terms of this *Settlement Agreement* and do not effectively result in a material modification of the terms of this *Settlement Agreement*.

12.13   Survival.  All representations, warranties and covenants set forth in this *Settlement Agreement* shall be deemed continuing and shall survive the *Effective Date of Settlement*.

12.14   Notices.  Any notice, demand, or other communication under this *Settlement Agreement* (other than the *Class Notice*, or other notices given at the direction of the *Court*) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), or delivered by reputable express overnight courier:

IF TO PLAINTIFFS:

Edwin J. Mills, Esq.
Michael J. Klein, Esq.
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel.: (212) 687-7230

Gregory M. Egleston, Esq.
GAINEY McKENNA & EGLESTON
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel.: (212) 983-1300

IF TO DEFENDANTS:

Michael J. Prame, Esq.
Sarah A. Zumwalt, Esq.
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5811
Tel.: (202) 857-0620

Robert S. Saunders, Esq.
Stephen D. Dargitz, Esq.
Daniel R. Ciarrocki, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Tel.: (302) 651-3000

Any *Party* may change the address at which they are to receive notice by written notice delivered to the other *Parties* in the manner described above.

12.15   <u>Entire Agreement.</u>   This *Settlement Agreement* contains the entire agreement between the *Parties* relating to this *Settlement*.

12.15.1  All of the exhibits to the *Settlement Agreement*, to the extent incorporated in those exhibits, are material and integral parts hereof and are, except as set forth herein, fully incorporated herein by this reference.

12.15.2  This *Settlement Agreement* (including its exhibits) constitutes the entire agreement among the *Parties* hereto concerning the *Settlement* of the *Action*, and no representations, warranties, or inducements have been made by any *Party* hereto concerning this *Settlement Agreement* and its exhibits other than those contained and memorialized in such documents.  Specifically, and without limiting the foregoing sentence, the *Parties* acknowledge that this *Settlement Agreement* specifically supersedes any settlement terms or settlement agreements that were previously agreed upon orally or in writing by any of the *Parties*.

12.15.3  It is understood by the *Parties* that, except for the matters expressly represented herein, the facts or law with respect to which this *Settlement Agreement* is entered into may turn out to be other than or different from the facts now known to each party or believed by such party to be true; each *Party* therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this *Settlement Agreement* shall be in all respects effective and not subject to termination by reason of any such different facts or law.

12.16   <u>Counterparts.</u>   This *Settlement Agreement* may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.  Signatures sent by facsimile or by e-mail on a document in Portable Document Format ("PDF") shall be deemed originals.

12.17   <u>Successors and Assigns.</u>   This *Settlement Agreement* shall be binding upon, and inure to the benefit of, the successors and assigns of the *Parties*.

12.18   Binding Effect.

12.18.1  This *Settlement Agreement* shall be binding when signed, but the *Settlement* shall be effective only on the condition that the *Effective Date of Settlement* occurs.

12.18.2  This *Settlement Agreement* binds and inures to the benefit of the *Parties* and their *Representatives*, assigns, heirs, administrators, executors, and successors.

12.19   Costs. Except as otherwise provided herein, each *Party* shall bear its own costs.

12.20   Confidentiality. All agreements made and orders entered during the course of the *Action* relating the confidentiality of information, including the *Protective Order*, shall survive this *Settlement Agreement*.

IN WITNESS WHEREOF, the *Parties* have executed this *Settlement Agreement* on July 11, 2014.

**FOR PLAINTIFFS**

Dated this 11th day of July, 2014.

By:_____

**STULL, STULL & BRODY**
Edwin J. Mills
Michael J. Klein
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230
Fax: (212) 490-2022
Email: emills@ssbny.com
Email: mklein@ssbny.com

By:_____

**GAINEY McKENNA & EGLESTON**
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: gegleston@gme-law.com

*Interim Co-Lead Counsel for Plaintiffs*

*FOR DEFENDANTS*

Dated this 11th day of July, 2014.

By: _Michael J Prame_

**GROOM LAW GROUP, CHARTERED**
Michael J. Prame (admitted *pro hac vice*)
Sarah A. Zumwalt (admitted *pro hac vice*)
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5811
Tel.: (202) 857-0620
Fax: (202) 659-4503
Email: mprame@groom.com
Email: szumwalt@groom.com

By: _____

**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
Robert S. Saunders (ID No. 3027)
Stephen D. Dargitz (ID No. 3619)
Daniel R. Ciarrocki (ID No. 5412)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Tel.: (302) 651-3000
Fax: (302) 651-3001
Email: rob.saunders@skadden.com
Email: stephen.dargitz@skadden.com
Email: dan.ciarrocki@skadden.com

*Counsel for Defendants*

EXHIBITS TO THE SETTLEMENT AGREEMENT

Exhibits

A           Preliminary Approval Order

            1.      Class Notice
            2.      Publication Notice
            3.      CAFA Notice

B           Final Order & Judgment

C           Plan of Allocation

# Exhibit A
# (Preliminary Approval Order)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: WILMINGTON TRUST CORP. ERISA LITIGATION | Civ. No. 10-01114-SLR<br><br>Hon. Sue L. Robinson<br><br>ELECTRONICALLY FILED |

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AGREEMENT, PRELIMINARILY CERTIFYING A RULE 23(b)(1) NON-OPT-OUT
CLASS FOR SETTLEMENT PURPOSES, APPROVING FORM
AND MANNER OF CLASS NOTICE, AND SETTING A DATE FOR HEARING
<u>ON FINAL APPROVAL OF SETTLEMENT</u>**

This *Action* involves claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), with respect to the Wilmington Trust Thrift Savings Plan (the "*Wilmington Trust Plan*"). [1]   The terms of the *Settlement* are set out in the Class Action Settlement Agreement fully executed as of July 11, 2014 (the "*Settlement Agreement*"), by counsel on behalf of the *Named Plaintiffs* and *Defendants.*

Pursuant to the *Named Plaintiffs'* Motion for Preliminary Approval, on July 11, 2014, the *Court* preliminarily considered the *Settlement* to determine, among other things, whether the *Settlement* is sufficient to warrant the issuance of notice to the proposed *Settlement Class Members*.  Upon reviewing the *Settlement Agreement* and the matter having come before the *Court* at the _____ __, 2014 hearing, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1.     ***Settlement Class* Findings** – Solely for the purposes of the *Settlement*, the *Court* preliminarily finds that the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of this *Court* and any other applicable law have been met as to the *Settlement Class* defined below, in that:

a)     The *Court* preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(a)(1), the *Settlement Class* is ascertainable from records kept with respect to the *Wilmington Trust Plan* and from other objective criteria, and the *Settlement Class Members* are so numerous that their joinder before the *Court* would be impracticable.

b)     The *Court* preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(a)(2), there are one or more questions of fact and/or law common to the *Settlement Class*.

---

[1] All italicized terms not otherwise defined in this *Preliminary Approval Order* shall have the same meaning as ascribed to them in the *Settlement Agreement.*

c)      The *Court* preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(a)(3), the claims of the *Named Plaintiffs* are typical of the claims of the *Settlement Class*.

d)      The *Court* preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(a)(4), the *Named Plaintiffs* will fairly and adequately protect the interests of the *Settlement Class* in that: (i) the interests of the *Named Plaintiffs* and the nature of their alleged claims are consistent with those of the *Settlement Class Members*; (ii) there appear to be no conflicts between or among the *Named Plaintiffs* and the *Settlement Class*; and (iii) the *Named Plaintiffs* and the *Settlement Class Members* are represented by qualified and reputable counsel who are experienced in preparing and prosecuting large, complex ERISA class actions.

e)      The *Court* preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(b)(1), the prosecution of separate actions by individual *Settlement Class Members* would create a risk of: (i) inconsistent or varying adjudications as to individual *Settlement Class Members* that would establish incompatible standards of conduct for the parties opposing the claims asserted in this *Action*; and/or (ii) adjudications as to individual *Settlement Class Members* that, as a practical matter, would be dispositive of the interest of the other *Settlement Class Members* not parties to the individual adjudications, or substantially impair or impede the ability of such persons to protect their interests.

f)      The *Court* preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(g), *Class Counsel* is capable of fairly and adequately representing the interests of the *Settlement Class*, in that *Class Counsel*: (i) have done appropriate work identifying or investigating potential claims in the *Action*; (ii) are experienced in handling class actions; and (iii) have committed the necessary resources to represent the *Settlement Class*.

2.      **Class Certification** – The *Court*, in conducting the settlement approval process required by FED. R. CIV. P. 23, preliminarily certifies solely for purposes of settlement the following non-opt-out class under FED. R. CIV. P. 23(b)(1) (the "*Settlement Class*"):

> All *Persons*, other than *Defendants*, who were *Participants* in or *Beneficiaries* of the Wilmington Trust Thrift Savings Plan at any time during the period from December 31, 2006 through and including May 13, 2011 and whose Wilmington Trust Thrift Savings Plan accounts were invested in the Wilmington Trust Corporation Stock Fund at any time during the period from December 31, 2006 through and including May 13, 2011.

Preliminary certification of a preliminary *Settlement Class* pursuant to the terms of the *Settlement Agreement* shall not constitute and does not constitute, and shall not be construed or used as an admission, concession, or declaration by or against *Defendants* that (except for the purposes of the *Settlement*), this *Action* or any other action is appropriate for class treatment under FED. R. CIV. P. 23, or any similar federal or state class action statute or rule, for litigation purposes.

3.      **Appointments** – The *Court* preliminarily appoints (a) the *Named Plaintiffs* as the representatives for the *Settlement Class* and (b) *Class Counsel* as counsel for the *Settlement Class*.

4.      **Settlement Administrator** – *Class Counsel* has the authority to select a third-party *Settlement Adminitrator*, consistent with the terms of the *Settlement Agreement*, which *Settlement Adminitrator* shall, among other things and as more fully described in the *Settlement Agreement*, assist in mailing and publication of the *Class Notice*, communicate with *Settlement Class Members*, and participate in the calculation of amounts due to *Settlement Class Members* under the *Settlement.*

5.      **Preliminary Findings Regarding Proposed *Settlement*** – The *Court* preliminarily finds that (a) the proposed *Settlement* resulted from serious, extensive arms-length and non-collusive negotiations, (b) the *Settlement Agreement* was executed only after *Class Counsel* had conducted appropriate investigation and discovery regarding the strengths and weaknesses of

*Named Plaintiffs'* claims, (c) *Class Counsel* have concluded that the proposed *Settlement* is fair, reasonable, and adequate, and (d) the proposed *Settlement* is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed *Settlement* to the *Settlement Class*.  Having considered the essential terms of the *Settlement Agreement* under the standards for preliminary approval of settlements as set forth in relevant jurisprudence, the *Court* finds that those whose claims would be settled, compromised, dismissed, and/or released pursuant to the *Settlement* should be given notice and an opportunity to be heard regarding final approval of the *Settlement* and other matters.

**6.**      ***Fairness Hearing*** – A hearing is scheduled for November 24, 2014 at 4:30 p.m. (the "*Fairness Hearing*") to determine, among other things:

- Whether the *Settlement* merits final approval as fair, reasonable, and adequate;

- Whether the *Action* should be dismissed with prejudice pursuant and subject to the terms of the *Settlement*;

- Whether the notice plan conducted by the *Parties* (a) constitutes the best practicable notice, (b) constitutes notice reasonably calculated, under the circumstances, to apprise *Settlement Class Members* of the pendency of the litigation, their right to object to the *Settlement*, and their right to appear at the *Fairness Hearing*, (c) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to notice, and (d) meets all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law;

- Whether *Class Counsel* adequately represented the *Settlement Class* for purposes of entering into and implementing the *Settlement*;

- Whether the proposed *Plan of Allocation* for the proceeds of the *Settlement* is fair and reasonable and should be approved; and

- Whether any application(s) for attorneys' fees and reimbursement of expenses and *Case Contribution Awards* to the *Named Plaintiffs* are fair and reasonable and should be approved.

7. ***Class Notice*** – *Named Plaintiffs* have presented to the *Court* a proposed form of *Class Notice*, appended hereto as Exhibit 1. The *Court* finds that such form fairly and adequately: (a) describes the terms and effects of the *Settlement Agreement*, the *Settlement*, and the *Plan of Allocation*; (b) notifies the *Settlement Class* that *Class Counsel* will seek attorneys' fees and reimbursement of litigation expenses from the *Settlement Fund*, and may request a *Case Contribution Award* of up to $10,000.00 for each of the *Named Plaintiffs* for their services in such capacity; (c) gives notice to the *Settlement Class* of the time and place of the *Fairness Hearing*; and (d) describes how the recipients of the *Class Notice* may object to any of the relief requested. The *Named Plaintiffs* have proposed the following manner of communicating the notice to *Settlement Class Members*, and the *Court* finds that such proposed manner is the best notice practicable under the circumstances and meet the requirements of the Fed. R. Civ. P. 23 and due process. Accordingly, the *Court* directs that *Class Counsel* shall:

- By no later than October 1, 2014, cause the *Class Notice*, with such non-substantive modifications thereto as may be agreed upon by the *Parties*, to be provided by first-class mail, postage prepaid, to the last known address of each *Settlement Class Member* who can be identified by reasonable effort.

- By no later than October 10, 2014, cause the *Class Notice* to be published to a website identified in the *Class Notice*, which website will also host and make

available copies of all *Settlement*-related documents, including the *Settlement Agreement*.

- By no later than October 10, 2014, cause the *Publication Notice* to be published, one time, in *The News Journal* (Wilmington).

8.      **Petition for Attorneys' Fees and Costs and Case Contribution Awards** – Any petition by *Class Counsel* or *Liaison Class Counsel* for attorneys' fees and litigation expenses, and any *Case Contribution Awards* to the *Named Plaintiffs*, and all briefs in support thereof, shall be filed no later than October 10, 2014.

9.      **Briefs in Support of Final Approval of the Settlement** – Briefs and other documents in support of final approval of the *Settlement* shall be filed no later than October 10, 2014.  Briefs and other documents in support of final approval of the *Settlement* shall be posted to the website listed in the *Class Notice* as soon as practicable after their filing.

10.     **Objections to *Settlement*** – Any *Settlement Class Member* may file an *Objection* to the fairness, reasonableness, or adequacy of the *Settlement*, to any term of the *Settlement Agreement*, to the *Plan of Allocation*, to the requested award of attorneys' fees and expenses, or to any request for a *Case Contribution Award* for the *Named Plaintiffs*.  An objector must file with the *Court* a statement of his, her, or its *Objection(s),* (a) specifying the reason(s), if any, for each such *Objection* made and (b) identifying any legal support, witnesses, documents and/or other evidence that the objector wishes to bring to the *Court*'s attention or introduce in support of the *Objection(s)*.  Any *Settlement Class Member* who files an *Objection* to the *Settlement* must also mail or e-mail copies of the *Objection* and any supporting law and/or evidence to *Class Counsel* and to counsel for the *Defendants*.  The address for filing *Objections* with the *Court* and serving objections on counsel are as follows:

***For Filing*:**

Clerk of the Court
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 18
Wilmington, DE 19801-3570
Re: *In re Wilmington Trust Corp. ERISA Litig.*, Civ. No. 10-01114-SLR

***To Class Counsel:***

Michael J. Klein, Esq.
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel.: (212) 687-7230
mklein@ssbny.com

Gregory M. Egleston, Esq.
GAINEY McKENNA & EGLESTON
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel.: (212) 983-1300
gegleston@gme-law.com

***To Defendants' Counsel:***

Michael J. Prame, Esq.
Sarah A. Zumwalt, Esq.
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5811
Tel.: (202) 857-0620
mprame@groom.com
szumwalt@groom.com

Any objector or his, her, or its counsel (if any and retained at the objector's expense) must file any *Objection* and supporting materials with the *Court* no later than November 3, 2014, and any *Settlement Class Member* objector must serve copies of the *Objection* (together with any supporting materials) on counsel listed above no later than November 3, 2014. Service on counsel may be effected by email, but service on the *Court* must be by first class mail. If an objector hires an attorney to represent him, her, or it for the purposes of making an objection pursuant to this paragraph, the attorney must also serve a notice of appearance on counsel listed above and file it with the *Court* no later than November 3, 2014. Any *Settlement Class Member* who does not timely submit a written *Objection* complying with the terms of this paragraph shall be deemed to

have waived, and shall be foreclosed from raising, any objection to the *Settlement*, and any untimely *Objection* shall be barred.

11.      *Class Counsel* and/or *Defendants' Counsel* may reply to any *Objection* no less than 10 days before the *Fairness Hearing*.  Any responses to *Objections* shall be filed with *Court* and served on opposing counsel no later than November 14, 2014.  Any additional briefs the *Parties* may wish to file in support of the *Settlement* shall be filed no later than 10 days before the *Fairness Hearing*.

12.      **Appearance at *Fairness Hearing*** – Any objector who files and serves a timely, written *Objection* in accordance with paragraph 10 above may also appear at the *Fairness Hearing* either in person or through qualified counsel retained at the objector's expense.  Objectors or their attorneys intending to appear at the *Fairness Hearing* must file a notice of intention to appear (and, if applicable, the name, address, and telephone number of the objector's attorney) with the *Court* by no later than November 3, 2014.  Any objector who does not timely submit a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the *Fairness Hearing*, except for good cause shown.

13.      **Notice Expenses** – The expenses of printing, mailing, and publishing all notices required hereby shall be paid from the *Settlement Fund*.

14.      **Service of Papers** – *Defendants'* counsel and *Class Counsel* shall promptly furnish each other with copies of any and all *Objections* that come into their possession.

15.      **No Settlement Discovery** – No discovery by any person with regard to the *Settlement* shall be permitted as to any of the settling *Parties* other than as may be directed by the Court upon a sufficient showing by the person seeking such discovery pursuant to a motion properly noticed and served.

**16.**   ***Termination of Settlement*** – If the *Settlement* terminates in accordance with the terms of the *Settlement Agreement*, this *Preliminary Approval Order* shall become null and void, *ab initio*, and shall be without prejudice to the rights of the *Parties*, all of whom shall revert to their positions as of the day immediately before the *Settlement Agreement* was executed by the parties.

**17.**   **Use of *Preliminary Approval Order*** – This *Preliminary Approval Order* is not admissible as evidence for any purpose against *Defendants* in any pending or future litigation. This *Preliminary Approval Order* shall not be construed or used as an admission, concession, or declaration by or against *Defendants* of any finding of fiduciary status, fault, wrongdoing, breach, or liability. This *Preliminary Approval Order* shall not be construed or used as an admission, concession, or declaration by or against *Named Plaintiffs* or the *Settlement Class* that their claims lack merit, or that the relief requested in the *Action* is inappropriate, improper, or unavailable. This *Preliminary Approval Order* shall not be construed or used as an admission, concession, declaration, or waiver by any *Party* of any arguments, defenses, or claims he, she, or it may have, without limitation, in the event that the *Settlement Agreement* terminate*s*. Moreover, the *Settlement Agreement* and any proceedings taken pursuant to the *Settlement Agreement* are for *Settlement* purposes only. Neither the fact of, nor any provision contained in the *Settlement Agreement* or its exhibits, nor any actions taken thereunder shall be construed as, offered into evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or admission of any kind as to the truth of any allegation or validity of any defense that has been, could have been, or might be asserted.

**18.**   **Jurisdiction** – The *Court* hereby retains jurisdiction for purposes of implementing the *Settlement*, and reserves the power to enter additional orders to effectuate the fair and orderly

administration and consummation of the *Settlement* as may from time to time be appropriate, and to resolve any and all disputes arising thereunder.

**19.     Continuance of *Fairness Hearing*** – The *Court* reserves the right to continue the *Fairness Hearing* without further written notice.


SO ORDERED this _____ day of _____, 2014.


_____
HON. SUE L. ROBINSON
UNITED STATES DISTRICT JUDGE

# Exhibit A.1
# (Class Notice)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: WILMINGTON TRUST CORP. ERISA LITIGATION | Civ. No. 10-01114-SLR<br><br>Hon. Sue L. Robinson<br><br>ELECTRONICALLY FILED |

### NOTICE OF CLASS ACTION SETTLEMENT

YOUR LEGAL RIGHTS MIGHT BE AFFECTED IF YOU ARE A MEMBER OF THE FOLLOWING SETTLEMENT CLASS:

**All Persons, other than Defendants, who were Participants in or Beneficiaries of the Wilmington Trust Thrift Savings Plan at any time during the period from December 31, 2006 through and including May 13, 2011 and whose Wilmington Trust Thrift Savings Plan accounts were invested in the Wilmington Trust Corporation Stock Fund at any time during the period from December 31, 2006 through and including May 13, 2011 (the "Settlement Class").**

**PLEASE READ THIS NOTICE CAREFULLY.  A FEDERAL COURT AUTHORIZED THIS NOTICE.  THIS IS NOT A SOLICITATION FROM A LAWYER.  YOU HAVE NOT BEEN SUED.**

This notice is being distributed to advise you that the United States District Court for the District of Delaware (the "Court") has preliminarily approved a proposed settlement (the "Settlement") of a lawsuit brought under the Employee Retirement Income Security Act of 1974 ("ERISA") by Julie Gray and James Bradford, on behalf of themselves, the Wilmington Trust Thrift Savings Plan ("Wilmington Trust Plan"), and as representatives of the Settlement Class described above.  Named Plaintiffs and Defendants are referred to as the "Parties."  The lawsuit is referred to as the "Action."

The Court has scheduled a hearing (the "Fairness Hearing") to consider Named Plaintiffs' motion for final approval of the Settlement, Class Counsel's application for attorneys' fees, reimbursement of litigation expenses, and Case Contribution Awards to Named Plaintiffs.  The Fairness Hearing has been scheduled for _____ __, 2014 at __:__ __.m., in the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building 844 N. King Street, Unit 18, Wilmington, DE 19801-3570.

Any objections to the Settlement, the application for attorneys' fees and litigation expenses, or the Case Contribution Awards to Named Plaintiffs must be served in writing on Class Counsel and on Defendants' Counsel, as identified on Page _ of this Notice of Class Action Settlement ("Class Notice").  The procedure for objecting is described below.

This Class Notice contains summary information with respect to the Settlement.  The terms and conditions of the Settlement are set forth in a Settlement Agreement ("Settlement Agreement").  Capitalized terms used in this Class Notice but not defined in this Class Notice have the meanings assigned to them in the Settlement Agreement.  The Settlement Agreement, and additional information with respect to the Action and the Settlement, is available at www._____.com.  You also can obtain a copy of the Settlement Agreement and information about the Settlement by contacting the Settlement Administrator at 1-8XX-XXX-XXXX or by email WTSettlement@ssbny.com.  Please do not contact the Court, the Clerk's Office, or the Defendants.

PLEASE READ THIS CLASS NOTICE CAREFULLY AND COMPLETELY.  IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS.  YOU ARE NOT BEING SUED IN THIS MATTER.  YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE.  IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING.  IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT BY FOLLOWING THE PROCEDURES DESCRIBED BELOW.

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT | |
|---|---|
| NO ACTION IS | If the Settlement is approved by the Court and you are a Settlement Class Member, you will not |

| | |
|---|---|
| **NECESSARY TO RECEIVE PAYMENT.** | need to do anything to receive a payment, if you are entitled to any such payment under the Plan of Allocation.  If you are a Settlement Class Member, any share of the Settlement Fund to which you are entitled will be deposited into an account in the M&T Bank Corporation Retirement Savings Plan ("M&T Bank Plan").  If you do not have an account in the M&T Bank Plan, and you are entitled to a distribution of the Settlement Fund, an account will be created for you. <br><br> *If you did not receive this Notice by mail and you believe you should have, please contact the Settlement Administrator at 1-8XX-XXX-XXXX or WTSettlement@ssbny.com to ensure that your current address is entered into the database that will be used to distribute money from the Settlement.* |
| **YOU MAY OBJECT TO THE SETTLEMENT BY _____ __, 2014.** | If you wish to object to any part of the Settlement, you may (as discussed below) write to the Court and counsel about why you object to the Settlement. |
| **YOU MAY ATTEND THE FAIRNESS HEARING TO BE HELD ON_____ __, 2014.** | If you submit a written objection to the Settlement to the Court and counsel before the Court-approved deadline, you may (but do not have to) attend the Fairness Hearing and present your objections to the Court.  You may attend the Fairness Hearing even if you do not file a written objection, but you will only be allowed to speak at the Fairness Hearing if you file a written objection in advance of the Fairness Hearing AND you file a Notice of Intention to Appear, as described in the answer to Question 16 in this Class Notice. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Class Notice.

- The Court still has to decide whether to grant final approval of the Settlement.  Payments will be made only if the Court grants final approval of the Settlement and that approval is upheld in the event of any appeal.  Payments will be calculated based upon a formula approved by the Court (called a "Plan of Allocation") which will be calculated using the records of the Wilmington Trust Plan, so no data will be required from Settlement Class Members to calculate distributions.

Further information regarding this Action and this Class Notice may be obtained by contacting any of the following Class Counsel:

<div style="display:flex">

Michael J. Klein, Esq.
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel.: (212) 687-7230
mklein@ssbny.com

Gregory M. Egleston, Esq.
GAINEY McKENNA & EGLESTON
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel.: (212) 983-1300
gegleston@gme-law.com

</div>

Class Counsel has established a phone number to receive your comments and questions:  1-8XX-XXX-XXXX.  You may also send an email to WTSettlement@ssbny.com.  You should contact Class Counsel with any questions about this Settlement, not the Court, the Clerk's Office, or the Defendants.

## WHAT THIS NOTICE CONTAINS

SUMMARY OF SETTLEMENT ................................................................................................................ 3

BASIC INFORMATION ....................................................................................................................... 3

1.  WHY DID I GET THIS NOTICE PACKAGE? ............................................................................. 3
2.  WHAT IS THE ACTION ABOUT? ............................................................................................... 4
3.  WHY IS THIS CASE A CLASS ACTION? ................................................................................... 4
4.  WHY IS THERE A SETTLEMENT? ............................................................................................. 4
5.  HOW DO I KNOW WHETHER I AM PART OF THE SETTLEMENT? ................................... 5

THE SETTLEMENT BENEFITS—WHAT YOU GET ....................................................................... 5

6.  WHAT DOES THE SETTLEMENT PROVIDE? .......................................................................... 5
7.  HOW MUCH WILL MY PAYMENT BE? .................................................................................... 5
8.  HOW Do I RECEIVE A PAYMENT? ........................................................................................... 6
9.  WHEN WILL I GET MY PAYMENT? .......................................................................................... 6
10. CAN I GET OUT OF THE SETTLEMENT? ................................................................................. 6

THE LAWYERS REPRESENTING YOU ........................................................................................... 7

11. DO I HAVE A LAWYER IN THE CASE? ..................................................................................... 7
12. HOW WILL THE LAWYERS BE PAID? ...................................................................................... 7
13. HOW DO I TELL THE COURT IF I DO NOT LIKE THE SETTLEMENT? ........................... 7

**Questions?  CALL** 1-8XX-XXX-XXXX, **Email** WTSettlement@ssbny.com, **OR VISIT** www._____.com.
**Do not call the Court with your questions.**
**Page 2 of 8**

THE FAIRNESS HEARING ................................................................................................................. 7

14.     WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? ............................. 7
15.     DO I HAVE TO COME TO THE HEARING? ............................................................................... 8
16.     MAY I SPEAK AT THE HEARING? ......................................................................................... 8

IF YOU DO NOTHING ....................................................................................................................... 8

17.     WHAT HAPPENS IF I DO NOTHING AT ALL? ......................................................................... 8

GETTING MORE INFORMATION ..................................................................................................... 8

18.     ARE THERE MORE DETAILS ABOUT THE SETTLEMENT? ......................................................... 8

## SUMMARY OF SETTLEMENT

This Action is a consolidated proposed class action in which Named Plaintiffs allege that Defendants breached fiduciary duties owed to the participants in and beneficiaries of the Wilmington Trust Plan under ERISA arising from the Wilmington Trust Plan's investments in the Wilmington Trust Stock Fund during the period from December 31, 2006 through and including May 13, 2011 (the "Class Period").  Copies of the Complaint and other documents filed in the Action are available at www.     .com or from Class Counsel.

A Settlement Fund consisting of three million dollars ($3,000,000) in cash is being established.  The net amount of the Settlement Fund, with interest, and after payment of any taxes, any Court-approved attorneys' fees and litigation expenses of Class Counsel, any Court-approved Case Contribution Awards, and settlement administration costs, will be paid, through the M&T Bank Plan, to the Settlement Class Members according to a Court-approved Plan of Allocation.

### STATEMENT OF POTENTIAL OUTCOME OF THE ACTION

As with any lawsuit, the Parties would face an uncertain outcome if the Action were not settled.  Continued litigation could result in a judgment greater or less than the recovery under the Settlement or in no recovery.  Named Plaintiffs and Defendants have disagreed about whether Defendants did anything wrong, and they do not agree on the amount, if any, that would be recoverable even if Named Plaintiffs prevailed at trial.  Defendants have denied, and continue to deny, all claims and contentions of Named Plaintiffs in the Action; have denied and continue to deny any wrongdoing or liability whatsoever, and are entering into the Settlement solely to avoid the cost, disruption and uncertainty of litigation.  Having considered the uncertainty and expense inherent in any litigation, particularly in a complex case such as this, Named Plaintiffs and Defendants have concluded that it is desirable that the Action be fully and finally settled on the terms and conditions set forth in the Settlement Agreement.

### STATEMENT OF ATTORNEYS' FEES AND COSTS SOUGHT IN THE ACTION

Class Counsel will apply to the Court for an order awarding attorneys' fees and litigation expenses not in excess of one third (33 1/3%) of the Class Settlement Amount.  Any amount awarded will be paid from the Settlement Fund.  Defendants have no responsibility for payment of such fees and expenses.

### WHAT WILL NAMED PLAINTIFFS GET?

Named Plaintiffs will share in the allocation of the Settlement Fund in the same manner as other Settlement Class Members.  In addition, Class Counsel may request that the Named Plaintiffs be awarded up to $10,000 each as a Case Contribution Award for their representation of the Settlement Class.  Any such awards will be paid solely from the Settlement Fund in the amount approved by the Court.

## BASIC INFORMATION

| 1.   WHY DID I GET THIS NOTICE PACKAGE? |
|---|

You or someone in your family may have been a participant in or beneficiary of the Wilmington Trust Plan whose Wilmington Trust Plan accounts were invested in the Wilmington Trust Stock Fund during the Class Period, December 31, 2006 through and including May 13, 2011.

The Court directed that this Class Notice be sent to you because, if you fall within the definition of the Settlement Class, you have a right to know about the Settlement and the options available to you regarding the Settlement before the Court decides whether to approve the Settlement.  If the Court approves the Settlement, and after any objections and appeals are resolved, the Settlement Fund (net of any taxes, any Court-approved attorneys' fees and litigation expenses of Class Counsel, any Court-approved Case Contribution Awards, and settlement administration costs) will be deposited into the M&T Bank Plan, and allocated among Settlement Class Members according to a Court-approved Plan of Allocation.  This Class Notice describes the Action, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of this case is the United States District Court for the District of Delaware.  The persons who sued are called the "Named Plaintiffs," and the people they sued are called "Defendants."  Named Plaintiffs are Julie Gray and James Bradford.

**Questions?  CALL** 1-8XX-XXX-XXXX, **Email** WTSettlement@ssbny.com, **OR VISIT** www.     .com.
**Do not call the Court with your questions.**
**Page 3 of 8**

Defendants are Wilmington Trust Corp., Wilmington Trust Company, Gary E. Butler, Ted T. Cecala, Rebecca A. DePorte, Michael A. DiGregorio, William J. Farrell II, David R. Gibson, I. Gail Howard, Kevyn N. Rakowski, and Diane M. Sparks.

The consolidated Action is known as *In re Wilmington Trust Corp. ERISA Litig.*, Civ. No. 10-01114-SLR (D. Del.).

| 2.   WHAT IS THE ACTION ABOUT? |
| --- |

Named Plaintiffs claim that, under ERISA, Defendants owed fiduciary duties of loyalty, care, and prudence to the participants and beneficiaries of the Wilmington Trust Plan and that they violated those duties in connection with the Wilmington Trust Plan's investments in the Wilmington Trust Stock Fund.

Named Plaintiffs allege that Defendants allowed the investment of Wilmington Trust Plan accounts in the Wilmington Trust Stock Fund throughout the Class Period despite the fact that they knew or should have known that such investment was imprudent because, as alleged in their Complaint and among other things: (a) the Company had too much loan exposure to properties in Southern Delaware poultry country; (b) the Company violated prudent lending standards in connection with real estate lending practices, and utilized outdated appraisals; (c) the Company did not accept that its mid-Atlantic zone was being adversely affected by the market conditions affecting its peers; (d) the Company underreported its reserves for real-estate loan losses, which artificially inflated its net income and reduced its losses; (e) the Company engaged in unsafe or unsound practices and/or violations of law or regulation as determined by federal banking regulators; and (f) the Company's problems caused it to be on the verge of collapse. Named Plaintiffs allege that as a result, the Wilmington Trust Plan and the participants incurred significant losses due to the substantial investments in the Wilmington Trust Stock Fund. Defendants denied and continue to deny all of plaintiffs' allegations and claims made in this Action, including those described above.

### THE ACTION HAS BEEN AGGRESSIVELY LITIGATED

Class Counsel has extensively investigated the allegations in the Action. Class Counsel obtained and reviewed a substantial volume of documents, including Wilmington Trust Plan governing documents and materials, communications with Plan participants, Securities and Exchange Commission filings, press releases, public statements, news articles and other publications, and other documents regarding the matters that allegedly made the Wilmington Trust Stock Fund an imprudent Plan investment. Class Counsel also received documents from Defendants that were useful in evaluating their claims.

This Action was litigated by Named Plaintiffs and Class Counsel for approximately three and one quarter years before the Parties agreed on settlement terms. On December 20, 2010, Named Plaintiff James Bradford filed his class action complaint against Wilmington Trust Corp. and certain Wilmington Trust Corp. directors, officers and employees alleging various claims under ERISA relating to the Wilmington Trust Plan's investments in the Wilmington Trust Stock Fund. Shortly thereafter, Named Plaintiff Julie Gray filed a similar ERISA action against largely overlapping defendants. On March 15, 2012, the Court consolidated the cases and appointed Class Counsel and Interim Co-Lead Class Counsel in the consolidated matter. On May 25, 2012, Named Plaintiffs filed their Consolidated Class Action Complaint. Shortly thereafter, on August 8, 2012, Defendants filed a motion to dismiss the Action in its entirety. After it was fully briefed, on May 3, 2013, the Court granted Defendants' motion to dismiss in part and denied it in part. Plaintiffs filed a First Amended Complaint reflecting the Court's ruling, which Defendants then answered, denying its allegations, on July 1, 2013. Soon thereafter, the Court stayed discovery in the Action in part, allowing negotiated discovery specific to the Action. While negotiating the scope of discovery, the Parties also began negotiations of a potential resolution of the Action, which negotiations ultimately resulted in the Settlement Agreement.

### SETTLEMENT DISCUSSIONS

The proposed Settlement is the product of extensive, lengthy negotiations between Class Counsel and Defendants' counsel. Throughout the negotiations, Class Counsel was advised by consultants and experts, including individuals with expertise in damages in cases involving ERISA fiduciary liability.

| 3.   WHY IS THIS CASE A CLASS ACTION? |
| --- |

In a class action, one or more plaintiffs, called "class representatives" or "named plaintiffs," sue on behalf of people who have similar claims. All of these people who have similar claims collectively make up the "class" and are referred to individually as "class members." One case resolves the issues for all class members together. Because the purported wrongful conduct alleged in this Action affected a large group of people—participants in the Wilmington Trust Plan during the relevant time period—in a similar way, Named Plaintiffs filed this case as a proposed class action.

| 4.   WHY IS THERE A SETTLEMENT? |
| --- |

As in any litigation, all parties face an uncertain outcome. Continuation of the case against Defendants could result in a judgment greater than this Settlement. On the other hand, continuing the case could result in no recovery at all for Named Plaintiffs and the

**Questions?  CALL** 1-8XX-XXX-XXXX, **Email** WTSettlement@ssbny.com, **OR VISIT** www.          .com.
**Do not call the Court with your questions.**
**Page 4 of 8**

Settlement Class or it could result in a recovery that is less than the amount of the Settlement.  Based on these factors, Named Plaintiffs and Class Counsel have concluded that the proposed Settlement is in the best interests of all Settlement Class Members.

## 5.   HOW DO I KNOW WHETHER I AM PART OF THE SETTLEMENT?

You are a Settlement Class Member if you fall within the definition of the Settlement Class preliminarily approved by the Court:

> All Persons, other than Defendants, who were Participants in or Beneficiaries of the Wilmington Trust Thrift Savings Plan at any time during the period from December 31, 2006 through and including May 13, 2011 and whose Wilmington Trust Thrift Savings Plan accounts were invested in the Wilmington Trust Corporation Stock Fund at any time during the period from December 31, 2006 through and including May 13, 2011.

If you are a member of the Settlement Class, the amount of money you will receive, if any, will depend upon the Plan of Allocation, described below.  The Plan of Allocation will be calculated using the Wilmington Trust Plan's transaction history.  No information will be required of you, but until a Plan of Allocation is approved and the calculations thereunder are completed we will not know what, if anything, individual Settlement Class Members are entitled to under the Settlement

### THE SETTLEMENT BENEFITS—WHAT YOU GET

## 6.   WHAT DOES THE SETTLEMENT PROVIDE?

A Settlement Fund consisting of three million dollars ($3,000,000) is being established in the Action.  The net amount in the Settlement Fund, including interest, after payment of, or establishment of reserves for, any taxes, any Court-approved attorneys' fees and litigation expenses of Class Counsel, and any Court-approved Case Contribution Awards, and settlement administration costs, will be deposited into the M&T Bank Plan, and the remaining amount will be allocated to the accounts of Settlement Class Members according to a Plan of Allocation to be approved by the Court.  Settlement Class Members who do not have an account in the M&T Bank Plan will have an account created for them.

In exchange for the settlement payment and other consideration, all Settlement Class Members and anyone claiming through them will fully release all Defendant Releasees from all Released Claims, and will be barred from bringing any Released Claim against any Defendant Releasee. The specific Defendant Releasees are identified in the Settlement Agreement; generally they are Defendants and certain affiliated or otherwise related persons and entities. The Released Claims, as specifically defined in the Settlement Agreement and only summarized here, generally include, subject to certain limitations set forth in the Settlement Agreement, all claims asserted in the Action, as well as any claims that could have been asserted by or on behalf of Settlement Class members which arise from, out of, or in connection with any of the acts, omissions, facts, matters, transactions, or occurrences that are alleged, referred to, described, or mentioned in the Complaint. This means that Settlement Class members will not have the right to sue the Defendant Releasees for any such claims if the Settlement is approved. The Released Claims do not include claims to enforce the Settlement or the claims asserted in *In Re: Wilmington Trust Securities Litigation*, Civ. No. 1:10-cv-00990-SLR (D. Del. filed Nov. 18, 2010), which is a separate lawsuit and which is not affected by this Settlement.  However, Settlement Class members shall not be entitled to recover more than 100% of their losses.

The above description of the proposed Settlement is only a summary.  The complete terms, including the definitions of the Plaintiff Releasors, the Defendant Releasees, and the Released Claims, are set forth in the Settlement Agreement (including its exhibits), which may be obtained at www._____.com or by contacting Class Counsel listed on Page 2 above.

## 7.   HOW MUCH WILL MY PAYMENT BE?

Your share (if any) of the Settlement Fund, net of the fees and expenses described above, will depend on your alleged loss, compared to other Settlement Class Members' alleged losses, related to the Wilmington Trust Plan's investments in the Wilmington Trust Stock Fund at any time during the period from December 31, 2006 to May 13, 2011. Each Settlement Class Member's share will be calculated by a third-party settlement administrator selected by Class Counsel (the "Settlement Administrator") according to a Court-approved Plan of Allocation.  Because the Settlement proceeds are less than the total losses alleged by the Settlement Class, each Settlement Class Member's recovery will be less than his or her alleged loss.  You are not responsible for calculating the amount you may be entitled to receive under the Settlement.  **We will not know how much your payment (if any) will be until after the Settlement is approved and calculations required by the Plan of Allocation have been completed.  The Settlement Fund will be distributed as soon as practicable once distribution amounts have been confirmed.**

In general, your proportionate share of the Settlement will be calculated as follows:

- Each Settlement Class Member's "Net Loss" will be calculated.  For each Settlement Class Member, his or her Net Loss will be equal to (a) the dollar value, if any, of the balance invested in the Wilmington Trust Stock Fund on the first day of

**Questions?  CALL** 1-8XX-XXX-XXXX, **Email** WTSettlement@ssbny.com, **OR VISIT** www._____.com.
**Do not call the Court with your questions.**
**Page 5 of 8**

the Class Period (December 31, 2006), plus (b) the dollar value, if any, of units of the Wilmington Trust Stock Fund purchased during the Class Period as of the time of purchase(s), minus (c) the dollar value, if any, of units of the Wilmington Trust Stock Fund sold during the Class Period as of the time of sale(s), minus (d) the dollar value if any, of the balance invested in the Wilmington Trust Stock Fund on the last day of the Class Period (May 13, 2011) as of the market's close.

- All Net Losses of the Settlement Class Members will be aggregated to yield the total loss of the Wilmington Trust Plan over the Class Period, and each Settlement Class Member's percentage of that total loss will be calculated.

- Applying that percentage to the Settlement Fund (described above), the Settlement Administrator will calculate each Settlement Class Member's share of those proceeds on a preliminary basis.

- All Settlement Class Members whose preliminary share is less than twenty-five dollars ($25) will be deemed to have a final share equal to zero dollars ($0) and will not receive a Settlement distribution. The Settlement Administrator will then recalculate the loss percentage of those Settlement Class Members whose preliminary share was not less than $25, so as to arrive at each such Settlement Class Member's final share.

**Do not worry if you do not have records that show your Plan activity.**  If you are entitled to a share of the Settlement Fund, your share of the Settlement will be determined based on the Wilmington Trust Plan's records for your account.  If you have questions regarding the allocation of the Settlement proceeds, please contact Class Counsel listed on Page **Error! Bookmark not defined.** above.

## 8.  HOW DO I RECEIVE A PAYMENT?

You do not need to file a claim.  If you are a Settlement Class Member entitled to a share of the Settlement Fund, and you have an account in the M&T Bank Plan, the funds will be deposited in you M&T Bank Plan account.  If you are entitled to a distribution but do not have an account in the M&T Bank Plan an account will be created for you.

Please note that Settlement Class Members who do not qualify for a payment under the Plan of Allocation will not receive written notification, as sending such notifications would cost money and would diminish the payments made to other Settlement Class Members.

## 9.  WHEN WILL I GET MY PAYMENT?

The Settlement cannot be completed unless and until several events occur, including the Court's approval of the Settlement, that approval becoming Final and no longer subject to appeals to any court.  The Settlement Fund will be deposited into the M&T Bank Plan and allocated to the accounts of Settlement Class Members pursuant to the Plan of Allocation as soon as practicable.  If the Final Order is appealed, resolution of that appeal may take several years.  The Settlement Fund, however, will be invested in insured, interest-bearing securities, and the interest income will be included in the amount deposited into the M&T Bank Plan and allocated to Settlement Class Members.

**There will be no payments if the Settlement Agreement is terminated.**

The Settlement Agreement may be terminated for several reasons, including if (1) the Court does not approve, or materially modifies, the Settlement Agreement or (2) the Court approves the Settlement Agreement but the approval is reversed or materially modified by an appellate court.  If the Settlement Agreement is terminated, the Action will proceed as if the Settlement Agreement had not been entered into by the Parties.

We will need your address to send you correspondence about any payment you are due.  **Please notify Class Counsel if this Notice was forwarded to you or if you move before receiving a distribution.**

## 10.  CAN I GET OUT OF THE SETTLEMENT?

**You do not have the right to exclude yourself from the Settlement**.  The Settlement Agreement provides for certification of the Settlement Class as a non-opt-out class action under Federal Rule of Civil Procedure 23(b)(1), and the Court has preliminarily determined that the requirements of that rule have been satisfied.  Thus, it is not possible for any Settlement Class Members to exclude themselves from the Settlement.  As a Settlement Class Member, you will be bound by any judgments or orders that are entered in the Action for all claims that were or could have been asserted in the Action or are otherwise released under the Settlement.

Although you cannot opt out of the Settlement, you can object to the Settlement and ask the Court not to approve it.  For more information on how to object to the Settlement, see the answer to Question 13 below.

**Questions?  CALL** 1-8XX-XXX-XXXX**, Email** WTSettlement@ssbny.com**, OR VISIT** www.          .com.
**Do not call the Court with your questions.**
**Page 6 of 8**

## THE LAWYERS REPRESENTING YOU

### 11.  DO I HAVE A LAWYER IN THE CASE?

The Court has preliminarily appointed the law firms of Stull, Stull & Brody and Gainey, McKenna & Egleston as Class Counsel for the Settlement Class.  You will not be charged directly by these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### 12.  HOW WILL THE LAWYERS BE PAID?

Class Counsel will file a motion for the award of attorneys' fees and litigation expenses of not more than one third (33 1/3 %) of the Settlement Fund.  This motion will be considered at the Fairness Hearing described below.  Once filed, a copy of the motion will be available at www._____.com.  You can receive a copy of the motion after it is filed by contacting the Settlement Administrator at 1-8XX-XXX-XXXX or by email at WTSettlement@ssbny.com.  The Court will determine the actual amount of any award.

### OBJECTING TO THE ATTORNEYS' FEES

By following the procedures described in the answer to Question 13, you can inform the Court that you do not agree with the attorneys' fees and litigation expenses Class Counsel intends to seek and ask the Court to deny their motion or limit the award.

### 13.  HOW DO I TELL THE COURT IF I DO NOT LIKE THE SETTLEMENT?

If you are a Settlement Class Member, you can object to the Settlement if you do not like any part of it.  You should give reasons why you think the Court should not approve it.  To object, you must send a letter or other writing saying that you object to the Settlement in *In re Wilmington Trust Corp. ERISA Litig.*, Civ. No. 10-01114-SLR.  Be sure to include your name, address, telephone number, signature, and a full explanation of all the reasons why you object to the Settlement.  **Your written objection must be received by the following counsel no later than _____ __, 2014.  You may send counsel copies of your written objection by email.**

| *To Class Counsel:* | | *To Defendants' Counsel:* |
|---|---|---|
| Michael J. Klein, Esq. | Gregory M. Egleston, Esq. | Michael J. Prame, Esq. |
| STULL, STULL & BRODY | GAINEY McKENNA & EGLESTON | Sarah A. Zumwalt, Esq. |
| 6 East 45th Street | 440 Park Avenue South, 5th Floor | GROOM LAW GROUP, CHARTERED |
| New York, NY 10017 | New York, NY 10016 | 1701 Pennsylvania Ave, N.W. |
| Tel.: (212) 687-7230 | Tel.: (212) 983-1300 | Washington, D.C. 20006-5811 |
| mklein@ssbny.com | gegleston@gme-law.com | Tel.: (202) 857-0620 |
| | | mprame@groom.com |
| | | szumwalt@groom.com |

**You must also file your objection with the Clerk of the Court of the United States District Court for the District of Delaware by sending it via first class mail.**  The mailing address is:

> Clerk of the Court
> United States District Court
> District of Delaware
> J. Caleb Boggs Federal Building
> 844 N. King Street
> Unit 18
> Wilmington, DE 19801-3570

The objection must refer prominently to: *In re Wilmington Trust Corp. ERISA Litig.*, Civ. No. 10-01114-SLR.

**Your objection must be received not later than _____ __, 2014.**

### THE FAIRNESS HEARING

The Court will hold the Fairness Hearing to decide whether to approve the Settlement as fair, reasonable, and adequate.  You may attend the Fairness Hearing, and you may ask to speak, but you do not have to attend.

### 14.  WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court will hold the Fairness Hearing at __:_0 _.m. on _____ __, 2014, at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Unit 18, Wilmington, DE 19801-3570, in the courtroom then

**Questions?  CALL** 1-8XX-XXX-XXXX, **Email** WTSettlement@ssbny.com, **OR VISIT** www._____.com.
**Do not call the Court with your questions.**
**Page 7 of 8**

occupied by United States District Judge Sue L. Robinson.  **The Court may adjourn or relocate the Fairness Hearing without further notice to the Settlement Class, so if you wish to attend, you should confirm the location, date and time of the Fairness Hearing with Class Counsel before doing so.**  At that hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court will also rule on motions for attorneys' fees and reimbursement of litigation expenses and for Case Contribution Awards.  The Parties do not know how long these decisions will take or whether appeals will be taken.

### 15.  DO I HAVE TO COME TO THE HEARING?

No, but you are welcome to come at your expense.  If you file an objection, you do not have to come to the Fairness Hearing to present it.  As long as your written objection was received timely, it will be before the Court when it considers whether to approve the Settlement.  You also may pay your own lawyer to attend the Fairness Hearing, but such attendance is also not necessary.

### 16.  MAY I SPEAK AT THE HEARING?

If you submit a written objection to the Settlement to the Court and counsel before the Court-approved deadline, you may (but do not have to) attend the Fairness Hearing and present your objections to the Court.  You may attend the Fairness Hearing even if you do not file a written objection, but you will only be allowed to speak at the Fairness Hearing if you file a written objection in advance of the Fairness Hearing AND you file a Notice of Intention To Appear, as described in this paragraph, or if the Court otherwise allows you to speak.  To do so, you must send a letter or other paper called a "Notice of Intention To Appear at Fairness Hearing in *In re Wilmington Trust Corp. ERISA Litig.*, Civ. No. 10-01114-SLR."  Be sure to include your name, address, telephone number, and your signature.  Your Notice of Intention To Appear must be received by the attorneys listed in the answer to Question 13 above, no later than _____ __, 2014, and must be filed with the Clerk of the Court at the address listed in the answer to Question 13.

### IF YOU DO NOTHING

### 17.  WHAT HAPPENS IF I DO NOTHING AT ALL?

If you do nothing and you are a Settlement Class Member, you will participate in the Settlement as described above in this Class Notice and you will release all Released Claims against all of the Defendant Releasees.

### GETTING MORE INFORMATION

### 18.  ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

Yes.  This Class Notice summarizes the proposed Settlement.  The complete terms are set forth in the Settlement Agreement.  You may obtain a copy of the Settlement Agreement by making a written request to Class Counsel listed on Page 2 above.  Copies may also be obtained at a dedicated settlement website, www.        .com, by calling the toll-free number, 1-8XX-XXX-XXXX, or by sending an email to WTSettlement@ssbny.com.  You are encouraged to read the complete Settlement Agreement.

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, OR THE DEFENDANTS REGARDING THIS NOTICE.**

DATED: _____, 2014

**Questions?  CALL** 1-8XX-XXX-XXXX, **Email** WTSettlement@ssbny.com, **OR VISIT** www.        .com.
**Do not call the Court with your questions.**
**Page 8 of 8**

# Exhibit A.2
# (Publication Notice)

<div align="center">

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

</div>

| | |
|---|---|
| IN RE: WILMINGTON TRUST CORP.<br>ERISA LITIGATION | Civ. No. 10-01114-SLR<br><br>Hon. Sue L. Robinson<br><br>ELECTRONICALLY FILED |

<div align="center">

**NOTICE BY PUBLICATION OF PROPOSED**
**CLASS ACTION SETTLEMENT AND FAIRNESS HEARING**

</div>

**TO:**   **All Persons, other than Defendants, who were Participants in or Beneficiaries of the Wilmington Trust Thrift Savings Plan at any time during the period from December 31, 2006 through and including May 13, 2011 and whose Wilmington Trust Thrift Savings Plan accounts were invested in the Wilmington Trust Corporation Stock Fund at any time during the period from December 31, 2006 through and including May 13, 2011 (the "Settlement Class").**

**PLEASE READ THIS NOTICE CAREFULLY.  A FEDERAL COURT AUTHORIZED THIS NOTICE.  THIS IS NOT A SOLICITATION.  YOU ARE NOT BEING SUED.**

A Settlement has been preliminarily approved by a federal court in a class action lawsuit against Wilmington Trust Corporation, Wilmington Trust Company and certain individuals, including former officers and directors, alleging breaches of fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  The terms and conditions of the Settlement are set forth in a Settlement Agreement ("Settlement Agreement").  The Settlement Agreement, and additional information with respect to the lawsuit and the Settlement, is available at www.____.com.  You also can obtain a copy of the Settlement Agreement and information about the Settlement by contacting the Settlement Administrator at 1-8XX-XXX-XXXX or by email WTSettlement@ssbny.com.  Capitalized terms used in this  Notice but not defined herein have the meanings assigned to them in the Settlement Agreement

This Settlement provides for a cash payment of $3,000,000 (Three Million Dollars), minus Court-approved attorneys' fees and litigation expenses, costs of administering the Settlement, and Case Contribution Awards to the Named Plaintiffs.  The Settlement proceeds (net of Court-approved expenses, fees, costs and awards) will be allocated to the Settlement Class members pursuant to a Court-approved Plan of Allocation.  If you qualify, you will receive such an allocation..  You do not need to submit a claim or take other action if you qualify for an allocation and the Settlement is approved by the Court.

A final approval hearing (the "Fairness Hearing") will be held on _____, 2014, at ____ .m., before the Honorable Sue L. Robinson, United States District Court Judge to determine, among other things (as set forth in the Parties' proposed Final Order):  (1) whether the proposed Settlement should be granted final approval; (2) whether the proposed Plan of Allocation is fair, reasonable, and adequate; (3) whether Class Counsel's request for an award of attorneys' fees, reimbursement of litigation expenses and for a Case Contribution Award to the Named Plaintiffs relating to their representation of the Settlement Class should be approved; and (4) whether the lawsuit and the claims of the members of the Settlement Class against Defendants should be dismissed on the merits with prejudice.  The Fairness Hearing will be held at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building 844 N. King Street, Unit 18, Wilmington, DE 19801-3570, or as the Court may otherwise designate.

**IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS AS DEFINED ABOVE, YOUR RIGHTS MAY BE AFFECTED BY THE PROPOSED SETTLEMENT AND RELEASE OF PARTIES AND CLAIMS, AS SET FORTH IN THE SETTLEMENT AGREEMENT.**  Defendants are excluded from the Settlement.

**You do not have the right to exclude yourself from the Settlement in this case, but you do have the right to object by writing to the Court.**  Any objection to the Settlement, must be filed with the clerk of the Court and served upon each of the following law firms **no later than _____, 2014**, at the addresses listed below (any objection may be sent to counsel by email, but must be sent to the Court by first class mail):

| *To Class Counsel:* | | *To Defendants' Counsel:* |
|---|---|---|
| Michael J. Klein, Esq.<br>STULL, STULL & BRODY<br>6 East 45th Street | Gregory M. Egleston, Esq.<br>GAINEY McKENNA & EGLESTON<br>440 Park Avenue South, 5th Floor | Michael J. Prame, Esq.<br>Sarah A. Zumwalt, Esq.<br>GROOM LAW GROUP, CHARTERED |

<div align="center">

**Questions?  CALL** 1-8XX-XXX-XXXX**, Email** WTSettlement@ssbny.com**, OR VISIT** www.____.com.
**Do not call the Court with your questions.**

</div>



New York, NY 10017
Tel.: (212) 687-7230
mklein@ssbny.com

New York, NY 10016
Tel.: (212) 983-1500
gegleston@gme-law.com

1701 Pennsylvania Ave. N.W.
Washington, D.C. 20006-5811
Tel.: (202) 857-0620
mprame@groom.com
szumwalt@groom.com

*To the Court:*

Clerk of the Court
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 18
Wilmington, DE 19801-3570

If you are a member of the Settlement Class and have not yet received the Class Notice, or if you want more information regarding anything in this Publication Notice, you may obtain such information by visiting www.         .com, calling toll-free 8XX-XXX-XXXX, by writing to Class Counsel listed above or sending an email to WTSettlement@ssbny.com.

**DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, OR DEFENDANTS REGARDING THIS NOTICE.  THEY WILL NOT BE ABLE TO ANSWER YOUR QUESTIONS.**

DATED: _____, 2014          By Order of the United States District Court, District of Delaware

**Questions?  CALL 1-8XX-XXX-XXXX, Email WTSettlement@ssbny.com, OR VISIT www.         .com.
Do not call the Court with your questions.**

# Exhibit A.3
# (CAFA Notice)

# GROOM LAW GROUP

Michael J. Prame
(202) 861-6633
mjp@groom.com

July [xx], 2014

**VIA UNITED STATES MAIL**

To:    Federal and State Officials per 28 U.S.C. § 1715
       (See Distribution List Attached)

Re:    CAFA Notification for the Proposed Settlement in *In Re: Wilmington Trust Corp. ERISA Litigation*, Civ. No. 10-01114-SLR (D. Del. filed Dec. 20, 2010)

This notification is being sent to you pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), to inform you of a proposed class action settlement.

**Court:** United States District Court for the District of Delaware.

**Case Caption:** *In Re: Wilmington Trust Corp. ERISA Litigation*, Civ. No. 10-01114-SLR (D. Del. filed Dec. 20, 2010)

**Named Defendants:** Wilmington Trust Corporation, Wilmington Trust Company, Gary E. Butler, Ted T. Cecala, Rebecca A. DePorte, Michael A. DiGregorio, William J. Farrell II, David R. Gibson, I. Gail Howard, Kevyn N. Rakowski, and Diane M. Sparks.

**Documents Enclosed:**

(The documents on the enclosed CD are in ".PDF" format.  If you do not have a .PDF reader, one may be obtained free of charge at http://get.adobe.com/reader/otherversions/.)

- Complaint and attachments, filed on December 20, 2010;
- Complaint and attachments, filed on January 31, 2011;
- First Amended Complaint For Breach Of ERISA's Fiduciary Duties, filed on June 6, 2013;
- Plaintiffs' Motion And Memorandum In Support For An Order Preliminarily Approving Settlement, Preliminarily Certifying Settlement Classes and Appointing Co-Lead Class Counsel, Approving Form And Dissemination Of Class Notice, And Setting A Date And Time For The Fairness Hearing, filed on June [xx], 2014; and
- Class Action Settlement Agreement, including the following attachments:
  - [Proposed] Order Granting Preliminary Approval Of Class Action Settlement Agreement, Preliminarily Certifying A Rule 23(B)(1) Non-Opt-Out Class For

GROOM LAW GROUP

July [xx], 2014
Page 2

Settlement Purposes, Approving Form And Manner Of Class Notice, And Setting
A Date For Hearing On Final Approval Of Settlement;
o  [Proposed] Notice Of Class Action Settlement;
o  [Proposed] Notice By Publication Of Proposed Class Action Settlement And Final
   Approval Hearing;
o  [Proposed] Plan Of Allocation;
o  [Proposed] Final Approval Order And Judgment.

**<u>Upcoming Judicial Hearings:</u>**          No hearings are scheduled at this time.

No final judgment or notice of dismissal has been entered.  No written judicial opinions relate to
the materials listed above regarding the proposed notices to the class, the Class Action
Settlement Agreement, or any proposed final judgment.  At this time, it is not feasible to identify
with complete certainty the names of all class members (including all beneficiaries and
participants of the plan at issue).  Likewise, until the Settlement Administrator calculates each
class member's allocation of the net settlement proceeds, the proportionate share of the
settlement due to any particular class member cannot be determined.

Based on the information currently available regarding participants in the plan at issue, we
believe that (in the aggregate) roughly 1,840 individuals are members of the Settlement Class.
We currently believe that the members of the Settlement Class reside in the following states
(with a preliminary estimate of the number of Settlement Class members who reside in the
indicated state): DE (1260); PA (242); MD (68); NJ (64); FL (45); CA (30); GA (24); NY (23);
AZ (17); NC (12); MA (10); VA (10); TX (7); MN (5); NV (5); SC (3); CT (2); NH (2); OH (2);
VT (2); IL (1); LA (1); NM (1); OK (1); UT (1); WA (1); WV (1).

Class Counsel and Defendants' Counsel have made no other agreements contemporaneous to the
Class Action Settlement Agreement.

If you have questions about this notice, the litigation, or the enclosed materials, please contact
Defendants' Counsel:

<div align="center">

Michael J. Prame
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, N.W., Suite 1200
Washington, DC 20006-5811
Phone: (202) 857-0620
Fax: (202) 659-4503
Email: mjp@groom.com

</div>

GROOM LAW GROUP

July [xx], 2014
Page 3

Very truly yours,

Michael J. Prame

cc:     Edwin J. Mills, Esq.
        Michael J. Klein, Esq.
        Gregory M. Egleston, Esq.
        Robert S. Saunders, Esq.

GROOM LAW GROUP

July [xx], 2014
Page 4

## DISTRIBUTION LIST

Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Federal Reserve Bank of Atlanta
Attn: Dwight Blackwood, Assistant Vice
President
Attn: Richard Jones
Attn: Rebecca Wasserman
2301 Defoor Hills Road, N.W.
Atlanta, GA 30318

U.S. Securities and Exchange Commission
Attn: Richard Humes, Esq., Assistant General
Counsel
1 00 F Street, N .E.
Mail Stop 9612
Washington, D.C. 20549

Office of the Attorney General
501 Washington Ave.
P.O. Box 300152
Montgomery, AL 36130-0152

Office of the Attorney General
P.O. Box 110300
Juneau, AK 99811-0300

Office of the Attorney General
1275 W. Washington St.
Phoenix, AZ 85007-2926

Attorney General's Office
323 Center St., Suite 200
Little Rock, AR 72201-2610

Mississippi Attorney General's Office
Walter Sillers Building
550 High Street, Suite 1200
Jackson, MS 39201

Missouri Attorney General's Office
Supreme Court Building
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102

Office of the Attorney General
Justice Building, Third Floor
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401

Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509

Office of the Attorney General
100 North Carson Street
Carson City, NV 89701

Office of the Attorney General
33 Capitol St.
Concord, NH 03301

Office of the Attorney General
Richard J. Hughes Justice Complex
8th Floor, West Wing
25 Market Street
Trenton, NJ 08625-0080

GROOM LAW GROUP

July [xx], 2014
Page 5


CAFA Coordinator
Office of the California Attorney General
Consumer Law Section
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

Office of the Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203

Office of the Attorney General
55 Elm St.
Hartford, CT 06106

Office of the Attorney General
441 4th Street, NW
Washington, DC 20001

Office of the Attorney General
Carvel State Office Bldg.
820 N. French St.
Wilmington, DE 19801

Office of the Attorney General
The Capitol PL-01
Tallahassee, FL 32399-1050

Office of the Attorney General
40 Capitol Square, SW
Atlanta, GA 30334-1300

Department of the Attorney General
425 Queen St.
Honolulu, HI 96813

State of Idaho
Office of the Attorney General
700 W. Jefferson Street, Suite 210
P.O. Box 83720
Boise, Idaho 83720-0010

Office of New Mexico Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504-1508

Office of the Attorney General
Dept. of Law - The Capitol, 2nd fl.
Albany, NY 12224

Attorney General's Office
9001 Mail Service Center
Raleigh, NC 27699-9001

North Dakota Attorney General
State Capitol
600 E. Boulevard Ave.
Bismarck, ND 58505-0040

Ohio Attorney General
30 E. Broad St., 14th Floor
Columbus, OH 43215

Oklahoma Office of the Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Oregon Attorney General
Oregon Department of Justice
1162 Court St., NE
Salem, OR 97301

Pennsylvania Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

Office of the Attorney General
150 S. Main St.
Providence, RI 02903

GRO0M LAW GROUP

July [xx], 2014
Page 6

Illinois Attorney General
James R. Thompson Ctr.
100 W. Randolph St.
Chicago, IL 60601

South Carolina Attorney General
Rembert C. Dennis Office Bldg.
P.O. Box 11549
Columbia, SC 29211-1549

Indiana Attorney General's Office
Indiana Government Center South - 5th Floor
302 West Washington Street
Indianapolis, IN 46204

Office of the Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501

Iowa Attorney General
Hoover State Office Bldg.
1305 E. Walnut
Des Moines, IA 50319

Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202-0207

Kansas Attorney General
120 S.W. 10th Ave., 2nd Fl.
Topeka, KS 66612-1597

Office of the Attorney General
Capitol Station
P.O. Box 12548
Austin, TX 78711-2548

Office of the Attorney General
Capitol Building, Suite 118
700 Capitol Avenue
Frankfort, KY 40601

Office of the Attorney General
Utah State Capitol Complex
350 North State Street Suite 230
Salt Lake City, UT 84114-2320

Office of the Attorney General
P.O. Box 94095
Baton Rouge, LA 70804-4095

Attorney General's Office
109 State St.
Montpelier, VT 05609-1001

Office of the Attorney General
6 State House Station
Augusta, ME 04333

Office of the Attorney General
900 East Main Street
Richmond, VA 23219

Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202-2202

Washington State Office of the Attorney
General
1125 Washington St. SE
PO Box 40100
Olympia, WA 98504-0100

Office of the Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108-1518

Office of the Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV 25305

GROOM LAW GROUP

July [xx], 2014
Page 7

Michigan Department of Attorney General
P.O. Box 30212
525 W. Ottawa St.
Lansing, MI 48909

Office of the Attorney General
Wisconsin Department of Justice
State Capitol, Room 114 East
P.O. Box 7857
Madison, WI 53707-7857

Office of Minnesota Attorney General
1400 Bremer Tower
445 Minnesota Street
St. Paul, MN 55101-2131

Attorney General's Office
123 Capitol Bldg.
200 W. 24th Street
Cheyenne, WY 82002

# Exhibit B
# (Final Order & Judgment)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: WILMINGTON TRUST CORP. ERISA LITIGATION | Civ. No. 10-01114-SLR |
| | Hon. Sue L. Robinson |
| | ELECTRONICALLY FILED |

**FINAL ORDER & JUDGMENT**

This *Action*[1] came on for hearing on _____ __, 2014 to determine the fairness of the proposed settlement (the "*Settlement*") presented to the *Court* on _____ __, 2014 and the subject of this *Court's* Order Granting Preliminary Approval of Class Action Settlement Agreement, Preliminarily Certifying a Rule 23(b)(1) Non-Opt-Out Class for Settlement Purposes, Approving Form and Manner of Class Notice, and Setting a Date for Hearing on Final Approval of Settlement (Court File No. __). The issues having been duly heard and a decision having been duly reached:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      The *Court* has jurisdiction over the subject matter of the *Action* and over all parties to the *Action*, including all *Settlement Class Members*.

2.      For the sole purpose of settling and resolving the *Action*, the *Court* certifies this action as a non-opt-out class action under FED. R. CIV. P. 23(a) and 23(b)(1). The *Settlement Class* is defined as:

> All *Persons*, other than *Defendants*, who were *Participants* in or *Beneficiaries* of the Wilmington Trust Thrift Savings Plan at any time during the period from December 31, 2006 through and including May 13, 2011 and whose

---

[1] Except as otherwise defined herein, all capitalized and/or italicized terms used in this *Final Order* shall have the same meanings as ascribed to them in the *Class Action Settlement Agreement* among *Named Plaintiffs* and *Defendants*, executed on July 11, 2014. (Dkt. No. __)

Wilmington Trust Thrift Savings Plan accounts were invested in the Wilmington Trust Corporation Stock Fund at any time during the period from December 31, 2006 through and including May 13, 2011.

3.      *Named Plaintiffs* are appointed as class representative and *Class Counsel* is appointed as *Class Counsel* pursuant to FED. R. CIV. P. 23(g).

4.      The *Settlement Class* has received proper and adequate notice of the *Settlement Agreement*, the *Fairness Hearing*, *Class Counsel's* application for attorneys' fees and expenses and for a *Case Contribution Award* to the *Named Plaintiffs*, and the *Plan of Allocation*, such notice having been given in accordance with the *Preliminary Approval Order* (Court File No. ___).  Such notice included individual notice to all *Settlement Class Members* who could be identified through reasonable efforts, through publication in *The News Journal* (Wilmington), as well as notice through a dedicated website, and provided valid, due, and sufficient notice of these proceedings and of the matters set forth in this Order, and included sufficient information regarding the procedure for the making of objections.  Such notice (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise *Settlement Class Members* of the pendency of the *Action*, their right to object to the *Settlement*, and their right to appear at the Fairness Hearing; (c) was reasonable and constituted due, adequate, and sufficient notice to all *Persons* entitled to notice and who could be identified through reasonable effort; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, due process, and any other applicable law.  The *Class Notice* fully informed *Settlement Class Members* of their rights with respect to the *Settlement*, including the right to object to the *Settlement*, the application for an award of attorneys' fees and reimbursement of expenses, and the application for a *Case Contribution Award* to the *Named*

1

*Plaintiffs*. Defendants notified the appropriate Federal and State officials of this *Settlement* as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

5.  Pursuant to FED. R. CIV. P. 23(e), the Court finds that the *Settlement* embodied in the *Settlement Agreement* is a fair, reasonable, and adequate settlement and compromise of the claims asserted in this *Action*.  Specifically, the *Court* finds that:

(a)  The *Settlement* was negotiated vigorously and at arms-length by counsel for *Defendants,* on the one hand, and the *Named Plaintiff* and *Class Counsel* on behalf of the *Settlement Class*, on the other hand;

(b)  This *Action* settled after *Defendants* had answered the operative *Complaint* in this matter (Court File No. 59) and substantial discovery effort had been conducted;

(c)  The *Settlement* was reached after significant negotiations between *Class Counsel* and *Defendants' Counsel*;

(d)  *Named Plaintiff* and *Defendants* had sufficient information to evaluate the settlement value of the *Action*;

(e)  If the *Settlement* had not been achieved, the *Parties* faced the expense, risk, and uncertainty of extended litigation;

(f)  The amount of the *Settlement* – three million dollars ($3,000,000.00) – is fair, reasonable, and adequate;

(g)  At all times, the *Named Plaintiffs* have acted independently of *Defendants* and in the interest of the *Settlement Class*;

(h)     An *Independent Fiduciary* has made a determination that the *Settlement Agreement* is authorized by, and is appropriate for, the *M&T Bank Plan*, the successor in interest to the *Wilmington Trust Plan*.

(i)     The Court has duly considered and rejected any Objections to the Settlement that were filed;

6.     The Court hereby approves the *Settlement Agreement* and orders that the *Settlement Agreement* shall be consummated and implemented in accordance with its terms and conditions.

7.     The *Settlement* complies with the terms of the Department of Labor's Class Exemption, PTE 2003-39, as amended, and does not constitute a "prohibited transaction" under ERISA.  The *Settlement* also complies with Internal Revenue Service Revenue Ruling 2002-45 and the *Class Settlement Amount* is a restorative payment.

8.     The *Plan of Allocation* is fair and reasonable. The *Settlement Fund* shall be distributed in accordance with the *Plan of Allocation* and the *Settlement Agreement*.

9.     Any court order regarding *Class Counsel's* motion for an award of attorneys' fees, reimbursement of litigation expenses, and *Case Contribution Awards* for *Named Plaintiffs* shall in no way disturb or affect this *Final Order*. Reversal or modification on appeal of any order concerning *Class Counsel's* motion for an award of attorneys' fees, reimbursement of litigation expenses, and *Case Contribution Awards* shall not affect the finality of this *Final Order* and shall not constitute grounds for cancellation or termination of the *Settlement*.

10.     The *Court* holds that the *Escrow Account* established to hold the *Settlement Fund* is approved in order that it may be a Qualified Settlement Fund ("QSF") for federal tax purposes pursuant to Treas. Reg. § 1.468B-1.

11.     The *Action* is hereby dismissed with prejudice, each party to bear his, her, or its own costs, except as expressly provided herein.  By operation of this *Final Order* and effective upon its entry, (a) each *Settlement Class Member* releases and forever discharges the *Defendant Releasees* from the *Released Claims*, as described in the Section 3.2 of the *Settlement Agreement*; and (b) each *Defendant Releasor* releases and forever discharges the *Plaintiff Releasees* from any and all claims relating to the institution or prosecution of the *Action*, as described in Section 3.3 of the *Settlement Agreement*.  In connection with the dismissal of the *Action*, the *Parties* are to bear their own costs, except where otherwise provided in the *Settlement*.

12.     Each *Settlement Class Member* is hereby forever barred and enjoined from commencing or prosecuting any action that purports to challenge the mechanics of the distribution of the *Settlement Fund* or *Plan of Allocation* (or amounts distributed thereunder), or that asserts any of the *Released Claims* against any of the *Defendant Releasees*, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, or otherwise, in any local state or federal court, or in any agency or other authority or forum wherever located.  Any *Person* who knowingly violates this injunction shall be required to pay the costs and attorneys' fees incurred by the *Defendant Releasees* as a result of the violation.

13.     The *Court* retains exclusive jurisdiction to resolve any disputes or challenges that may arise as to the performance of the *Settlement Agreement* or any challenges as to the performance, validity, interpretation, administration, enforcement, or enforceability of the *Class Notice*, this *Final Order*, the *Settlement Agreement* or the termination of the *Settlement Agreement*.  The *Court* also retains exclusive jurisdiction and will rule by separate order with respect to all applications for awards of attorneys' fees, reimbursement of litigation expenses and

payment of a *Case Contribution Award* to *Named Plaintiffs*, submitted pursuant to the *Settlement Agreement*.

14.     In the event that the *Settlement Agreement* is terminated in accordance with its terms, this *Final Order* shall be rendered null and void, *ab initio,* and shall be vacated *nunc pro tunc*, and this *Action* shall for all purposes with respect to the *Parties* revert to its status as of the day immediately before the *Settlement Agreement* was executed by the *Parties*.  The *Parties* shall be afforded a reasonable opportunity to negotiate a new case management schedule.

15.     The *Court* recognizes that *Defendants* have denied and continue to deny the claims of *Named Plaintiffs* and the *Settlement Class*.  Neither the *Settlement Agreement*, this *Final Order*, any act performed or document executed in furtherance of the *Settlement*, nor the fact of the *Settlement* shall be used be used or construed as an admission, concession, or declaration of *Defendants*, or any other *Person*, of any finding of fiduciary status, fault, omission, mistake, or liability, nor shall be offered as evidence of any liability in this *Action* or any other proceeding.

SO ORDERED this _____ day of _____, 2014.

_____
HON. SUE L. ROBINSON
UNITED STATES DISTRICT JUDGE

# Exhibit C
# (Plan of Allocation)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: WILMINGTON TRUST CORP. ERISA LITIGATION | Civ. No. 10-01114-SLR |
| | Hon. Sue L. Robinson |
| | ELECTRONICALLY FILED |

**PLAN OF ALLOCATION**

**1.      Definitions**

Except as indicated in this *Plan of Allocation*, the capitalized and italicized terms used herein shall have the meaning ascribed to them in the *Settlement Agreement* in the above-captioned *Action* fully executed as of July 11, 2014 (the "*Settlement Agreement*").

**2.      Calculation of Allocation**

A.      Prior to disbursement of the *Distributable Net Proceeds* to the *M&T Bank Plan*, *Defendants* shall provide the *Settlement Administrator* retained by *Class Counsel* with the data necessary to allow the *Settlement Administrator* to determine the amount to be distributed to each *Settlement Class Member* in accordance with this *Plan of Allocation* as provided for herein.

B.      For each *Settlement Class Member*, the *Settlement Administrator* shall determine the net loss ("*Net Loss*") as follows:  *Net Loss* = A + B – C – D, where, for each *Settlement Class Member*'s individual *Wilmington Trust Plan* account during the *Class Period*:

1.      A = the dollar value, if any, of the balance invested in the *Wilmington Trust Stock Fund* on the first day of the *Class Period*;

2.      B = the dollar value, if any, of units of the *Wilmington Trust Stock Fund* purchased during the *Class Period* as of the time of purchase(s);

3.      C = the dollar value, if any, of units of the *Wilmington Trust Stock Fund* sold during the *Class Period* as of the time of sale(s); and

4. D = the dollar value, if any, of the balance invested in the *Wilmington Trust Stock Fund* on the last day of the *Class Period* as of the market's close.

In the event that a *Settlement Class Member*'s account was transferred, in whole or in part, to a *Beneficiary* (including an alternate payee) in accordance with the terms of the *Wilmington Trust Plan* during the *Class Period*, the *Settlement Class Member* and the transferee *Beneficiary* shall be treated as a single *Settlement Class Member* for the purpose of determining a *Net Loss*. The *Net Loss* shall then be allocated between the *Settlement Class Member* and *Beneficiary* according to the proportion of the *Net Loss* attributable to the holdings of the *Settlement Class Member* and of the *Beneficiary*.

C. The *Net Losses* of the *Settlement Class Members* as calculated in Section 3.B above will be totaled by the *Settlement Administrator* to yield the loss of the *Wilmington Trust Plan* as a whole over the *Class Period* (the "*Wilmington Trust Plan's Loss*").

D. The *Settlement Administrator* shall calculate each *Settlement Class Member*'s "*Preliminary Fractional Share*" of the *Wilmington Trust Plan's Loss* by dividing each *Settlement Class Member*'s *Net Loss* by the *Wilmington Trust Plan's Loss*.

E. The *Settlement Administrator* shall then calculate for each *Settlement Class Member* his or her "*Preliminary Dollar Recovery*" by multiplying the *Settlement Class Member*'s *Preliminary Fractional Share* by the *Distributable Net Proceeds*.

F. The *Settlement Administrator* shall identify all *Settlement Class Members* whose *Preliminary Dollar Recovery* is less than twenty-five dollars ($25.00). All such *Settlement Class Members* shall be identified as the "*Non-Recipients*" and will not receive an allocation from the *Distributable Net Proceeds*. The *Preliminary Dollar Recovery* otherwise allocable to the *Non-Recipients* shall be reallocated among the other *Settlement Class Members* proportionately in accordance with their *Net Losses*.

G.      The *Settlement Administrator* shall then, excluding all *Non-Recipients*, recalculate the *Preliminary Fractional Share* and the *Preliminary Dollar Recovery* for the other *Settlement Class Members* so as to arrive at the "*Final Fractional Share*" and the "*Final Dollar Recovery*" for each remaining *Settlement Class Member*.  The sum of the *Final Dollar Recoveries* must equal the *Distributable Net Proceeds*.  *Class Counsel* and any service company retained by *Class Counsel* shall be entitled to participate meaningfully in the process of calculating of the allocations.

H.      To the extent that detailed data is not available to determine the account balances of *Settlement Class Members* at the beginning or end of the *Class Period*, the foregoing calculations may be performed using data as of the nearest date for which data is available after the beginning or end of the *Class Period*.

**3.      Notice To Counsel Of Settlement Allocation Calculations**

A.      The *Settlement Administrator* shall provide to *Defendants' Counsel* a report describing the methodology used in calculating losses as described herein (or otherwise modified), a sampling of the summaries, compilations, calculations, or tabulations of the claims and amounts described herein, and a report that includes a list identifying the *Final Dollar Recovery* for each *Settlement Class Member*.  This report shall include the A, B, C, and D numbers referenced in paragraph 2.B for each *Settlement Class Member*.  The *Settlement Administrator* shall provide a copy of the report to the *Plan Administrator* with a copy to *Defendants' Counsel* and *Class Counsel*, except the report as provided to *Class Counsel* shall be redacted so as to only provide the last four digits of each participant's social security number.

**4.**     **Allocation of the Net Proceeds to the Settlement Class**

A.     No less than fifteen (15) days after the *Settlement Administrator* has provided the notice to *Defendants' Counsel* and *Class Counsel* as set forth in Section 3.A, *Class Counsel* shall direct the *Financial Institution* to disburse the *Distributable Net Proceeds* to the *Trustee* for distribution to or for the benefit of *Settlement Class Members*. The *Plan Administrator* shall direct the recordkeeper for the *M&T Bank Plan* to allocate the *Distributable Net Proceeds* pursuant to the report provided by the *Settlement Administrator* identifying the *Final Dollar Recovery* for each *Settlement Class Member*.

1)     Allocations to *Settlement Class Members* Who Are Current Participants in the *M&T Bank Plan*. As promptly as possible after deposit of the *Distributable Net Proceeds* with the *Trustee*, the recordkeeper shall allocate into each current *M&T Bank Plan* participant's account his or her *Final Dollar Recovery*, as calculated above, less any expenses or administrative charges approved by the *Court*. Each current *M&T Bank Plan* participant's *Final Dollar Recovery* shall be allocated among the participant's investment options in accordance with the most recent contribution investment direction on file with the *M&T Bank Plan* or, if no such direction is on file, in accordance with the *M&T Bank Plan*'s default investment procedures. The *M&T Bank Plan* participant may reallocate his or her *Final Dollar Recovery* as then permitted by the *M&T Bank Plan*.

2)     Allocations To *Settlement Class Members* Who Do Not Have An Account In The *M&T Bank Plan*. With respect to *Settlement Class*

*Members* who do not currently have an account in the *M&T Bank Plan*, the recordkeeper will establish an *M&T Bank Plan* account for each such *Settlement Class Member* who will be allocated a *Final Dollar Recovery*. As promptly as possible after deposit of the *Distributable Net Proceeds* into the *M&T Bank Plan*, the recordkeeper shall allocate into each *Settlement Class Member*'s newly established account his or her *Final Dollar Recovery*, as calculated above, less any expenses or administrative charges approved by the *Court*. Pending instruction from such former *Participant*, the deposited amount in his or her account shall be invested in accordance with the *M&T Bank Plan*'s default investment procedures.

B.      If any *Participant* with a *Final Dollar Recovery* greater than zero cannot be located, such *Participant*'s *Final Dollar Recovery* will be administered in accordance with *M&T Bank Plan*'s provisions and procedures governing un-locatable or otherwise missing participants. If the *Participant* and, if applicable, the *Participant*'s *Beneficiary* are deceased, such *Participant*'s *Final Dollar Recovery* will be administered in accordance with *M&T Bank Plan*'s provisions and procedures regarding deceased participants. If a Qualified Domestic Relations Order ("*QDRO*") is in effect with respect to an *M&T Bank Plan* account, the *M&T Bank Plan* account will be administered in accordance with the *M&T Bank Plan*'s *QDRO* rules and procedures. Distribution and other administrative fees and expenses, to the extent applicable under the *M&T Bank Plan*'s provisions and procedures, may be assessed against the *Participant*'s account.

**5.**         **Qualifications and Continuing Jurisdiction**

A.       In light of the manner in which the data is kept and the ease with which it can be analyzed, it may be appropriate to simplify some of the features of these calculations.   Such simplifications are acceptable as long as the two basic features of the distribution are preserved: (1) that each *Participant* receives a share of the *Net Proceeds* based approximately on the decline in the value of *Wilmington Trust* stock he or she held over the *Class Period* in comparison with the decline in value of *Wilmington Trust* stock held by the other *Participants* in the *Wilmington Trust Plan*; and (2) that the distribution take place through the *M&T Bank Plan* so as to realize any tax advantage of investment thereof.   Any such changes will be presented to the *Court* for approval pursuant to section 5.B below.

B.       The *Court* will retain jurisdiction over the *Plan of Allocation* to the extent necessary to ensure that it is fully and fairly implemented.